**William Howard MORROW, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17439.**

Court of Criminal Appeals of Oklahoma.

Oct. 11, 1972.

Rehearing Denied Oct. 27, 1972.

Robert E. Walker, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, William Howard Morrow, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Burglary in the Second-Degree; his punishment was fixed at two (2) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Jerry Gage testified that in the early morning hours of September 8, 1971, his 1963 Chevrolet automobile was parked in front of his barber shop in Oklahoma City. He testified that he had parked the vehicle there about 10:00 the previous evening and both the windows and doors were shut. He testified there were two sweaters, a pair of field glasses, and other personal property inside the vehicle. He heard a door slam and upon looking out, observed the defendant lying across the front seat of his vehicle with the door opened. Another subject had his head under the hood of the vehicle. He got his pistol, went outside, and observed the defendant looking under the hood. The other subject was at the side of the car with his head under it. He testified that a little red wire was stretched across

the top of his engine. He directed both subjects to back away from the car and to get up against a post. The defendant suggested that they go inside the barber shop and talk about it. The court thereupon conducted an evidentiary hearing outside the presence of the jury to determine whether or not the statement made by the defendant was free and voluntary. Thereupon the jury returned to the courtroom, and Gage testified that the defendant showed him a card and said he was a bondsman, and that he couldn't have been in any trouble before and have the bondsman card. The defendant stated; "he wanted the car to go by and let some girl look at it, and that he was going to bring it back." Gage made a telephone call and talked to the mother and father of the other subject, Wilson, and subsequently called the police. He testified that he had not previously known either the defendant or Wilson and did not give either of them permission to enter his car.

Officer Nance testified that he went to the barber shop on the morning in question and observed a 1963 Chevrolet setting in front of the shop with the driver's door open and the hood raised. He testified that a red electrical wire equipped with two alligator clamps was found near the vehicle. He testified that in his opinion the wire was a "hot wire."

For the defense, Mrs. Howard Morrow, the defendant's mother, testified that she had previously asked the defendant not to run around with Robert Wilson. She testified that her son had never been convicted of any crime involving moral turpitude.

■ The first proposition asserts that the trial court erred in not giving the defendant's requested instruction on the lesser included offense of 47 O.S., § 4–104, damaging or tampering with a vehicle. We are of the opinion that the trial court properly denied the defendant's requested instruction evidence of the specific non-burglarious intent. In Bolden v. State, Okl.Cr., 491 P.2d 313, we stated:

"The next proposition contends that the trial court erred in failing to instruct on the included offenses of Unlawful Entry and Malicious Destruction. The defendant candidly admits in his brief that 'but the evidence here, in absence of anything indicating malice or specific non-burglarious intent, would hardly seem to justify such an instruction.' In dealing with a similar question in Hickman v. State, Okl.Cr., 344 P.2d 593, where the accused denied being at the scene and denied knowledge of any burglary, we held that it was not error for the trial court to refuse instructions on included misdemeanor offenses. *In the instant case, neither defendant testified, and thus, there was no evidence tending to explain defendant's presence in the building which would call for an instruction on the included offenses.*" (EMPHASIS ADDED)

■ The second proposition contends that the verdict is not supported by sufficient evidence or is contrary to law and the court erred in overruling the defendant's demurrer of the State's evidence. The defendant argues that the State's evidence, viewed in strongest light, merely reflects that the defendant was found lying in the front seat of the automobile and that there was no evidence of intent to commit any felony. We are of the opinion that this proposition is without merit. The evidence on behalf of the State adduced that the vehicle was parked in front of the barber shop with the doors and windows closed. The defendant was observed lying in the front seat of the vehicle. His partner was looking under the hood of the vehicle, near which a hot wire was found. In Garrett v. State, Okl.Cr., 350 P.2d 983, we stated in the first two syllabi as follows:

"1. The breaking, necessary to constitute the crime burglary may be by an act of physical force, however slight, by which obstruction to entering is forcibly removed, and the opening of a closed

door in order to enter a building may constitute a breaking.

2. Where it is shown that one accused of burglary broke and entered a store in the night time, it may ordinarily be presumed that he did so with intent to steal, though at the time he was detected he had not appropriated any property."

■ The final proposition asserts that the trial court erred in denying the defendant the right to cross-examine Mr. Gage, concerning the voluntariness of any admission made by the defendant. The record reflects the following, found at pages 9 through 12:

"MR. WALKER: Judge, at this point I want to object to anything that the Morrow boy said or might have said until it has been and have evidence out of the hearing of this Jury because there is nothing to show that confession that it wasn't taken by duress or that he had a gun on them. The man had the gun on him and anything he said would have been said under duress. It is not a free and voluntary statement.

"THE COURT: All right. The jury will be excused for a couple of minutes. (WHEREUPON, the Jury was excused.) (WHEREUPON, the following proceedings were had, OUT OF THE HEARING OF THE JURY)

"MR. WALKER: The only thing that I want to make this objection to anything the defendant might have said at the present time or later on when this man was holding a gun upon him. May I ask him a question or two?

"THE COURT: Let me ask a question here. You saw them at your car; is that correct?

"THE WITNESS: Yes, sir.

"THE COURT: Both of them?

"THE WITNESS: Yes, sir.

"THE COURT: Both defendants?

"THE WITNESS: Yes, sir.

"MR. WALKER: I am not questioning his right to put a gun on them, Judge.

"THE COURT: You saw them molesting your car?

"THE WITNESS: Yes, I did.

"THE COURT: You called them to the inside of your barber shop; is that right?

"THE WITNESS: No, I told them to come against the pole. They wanted to go inside the barber shop and talk about it.

"THE COURT: You didn't go in though?

"THE WITNESS: Yeah, I backed up and they came in with me.

"THE COURT: All right. Then what happened?

"THE WITNESS: Well, they was trying to talk, trying to get me to turn them loose. I wasn't talking, they was talking. They was just trying to get me to turn them loose. Now, I didn't threaten them.

"THE COURT: Did you threaten them at all?

"THE WITNESS: No, sir, I was just trying to keep them there.

"THE COURT: The statements they made to you are voluntarily made?

"THE WITNESS: Yes, sir.

"THE COURT: And they were trying to get you to release them; is that correct?

"THE WITNESS: Right.

"MR. WALKER: Again I want to renew may objection on the basis that anything that was said that it was coercion and that it was duress.

"THE COURT: All right. Overruled with exceptions.

(WHEREUPON, the Jury returned to the box.)
(WHEREUPON, the following proceeding were had, in the presence of the Jury.)

"MR. WALKER: Comes now the defendant and by and through his attorney and objects to the attorney for the defendant not being permitted to examine this complaining witness here in regard to the admissions made to him under what circumstances they were made to him and what was said by him and what was said by the defendant out of the presence of this Jury.

"THE COURT: Let the record show that the defendant had every opportunity to ask the questions in the absence of the Jury. That he failed to do so. He made an objection for the record after the Court interrogated briefly the witness. That the statements apparently from what the witness stated was a voluntary statement made by this defendant without duress. Now, the Jury had returned to the box and you now desire to question further this witness which the Court has overruled and given him an exception.

"MR. WALKER: All right. Let the record show that I tried to ask him a question and the Judge said I will ask him the questions whereupon the Judge made his ruling without giving me further opportunity to examine this witness.

"THE COURT: Overruled, exceptions."

We need only to observe that at the conclusion of the trial court's examination of the witness outside the presence of the jury, the defendant did not request permission to further interrogate the witness rather he renewed his objection to the testimony. The trial court, satisfied that the statements of the defendant were voluntary, overruled his objection. We are of the opinion that the defendant's actions, by not further questioning the witness at the proper time, preclude him from complaining that he was prejudiced at this time.

In conclusion we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

SIMMS and BRETT, JJ., concur.