THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RUFUS JONES, Defendant-Appellant.

Fifth District   No. 79-66

Opinion filed July 21, 1980.

John H. Reid and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, and Erich Press, law student, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Rufus Jones, was charged with burglary, attempted armed robbery, aggravated battery and armed violence in a delinquency petition filed in the Circuit Court of St. Clair County. The State's motion to have him tried as an adult was granted, and he was then indicted by a grand jury on two counts of armed violence and one count of burglary. Defendant was found guilty in a bench trial and was sentenced to prison terms of 10 years for armed violence in the commission of a burglary, 20 years for armed violence in the commission of an aggravated battery, and 5 years for burglary to be served concurrently.

On appeal, defendant raises the following issues: (1) whether he can be found guilty of armed violence based upon the underlying felony of burglary where he was unarmed during entry; (2) whether the evidence was legally sufficient to find him guilty of armed violence based upon the underlying felony of aggravated battery where the weapon which served as the basis for the armed violence charge was also a necessary element of the underlying felony; (3) whether the trial court erred in certifying him as an adult for purposes of criminal prosecution; and (4) whether the sentences imposed were improper or excessive.

On June 26, 1978, at approximately 10:30 p.m., the home of Mr. and Mrs. Herbert Mueller, located in East St. Louis, Illinois, was entered by defendant without the knowledge or permission of the Muellers. The unauthorized access was gained through a pantry window in the kitchen. Once inside, defendant armed himself with a knife seized from a kitchen drawer. His presence in the home alerted Mrs. Mueller, who was in bed with her husband after retiring for the evening. She heard a noise and saw an object move in the hall outside the bedroom. Getting out of bed to investigate, she followed the object into the bathroom where she discovered defendant standing with his back to a wall and armed with a knife. Defendant led her back into the hall where he encountered Mr. Mueller. The Muellers were cautioned to cooperate if they did not want to get hurt. Defendant then gestured Mr. Mueller to follow him and commanded Mrs. Mueller to remain in the hall until he returned. He placed Mr. Mueller in a basement and secured the door to prevent escape and then returned to Mrs. Mueller and shoved her into a bedroom. Defendant attempted to remove her nightgown by cutting its straps with the knife, but she resisted and a struggle ensued. While Mrs. Mueller was grappling with him she sustained a cut on her hand which required treatment at a hospital. Defendant ultimately overcame her and, after removing the nightgown, engaged in sexual intercourse with her.

Mr. Mueller managed to escape from the basement through a trap door and fled to a neighbor's house to summon the police. A patrolman from the East St. Louis Police Department was the first officer at the scene. After being fully apprised of the situation, he climbed a ladder used by defendant in his entry and peered into a bedroom window. He observed defendant in the act of intercourse with Mrs. Mueller. The officer then entered the house by kicking in the kitchen door and made his way through the dark house to the bedroom. He entered the room with his service revolver drawn and announced that he was a police officer. Defendant glanced at the officer but continued his act of intercourse. The officer seized defendant by the shoulder and attempted to pull him off the woman but without success. Finally, the officer had to resort to striking defendant on the side of the head with the officer's service revolver. The

blow sent defendant sprawling to the floor, where he was immediately handcuffed. Once defendant was subdued, the officer switched on the bedroom lights. After a cursory search of the room, he noticed a knife lying on the bed. The knife was identified by the Muellers as being their paring knife which they kept in a drawer in the kitchen along with other food utensils.

It should be noted that at the time of the incident defendant was 13 years five months old, and Mr. and Mrs. Mueller were 67 and 75 years of age respectively.

Initially, defendant contends that he cannot be guilty of armed violence based upon the underlying felony of burglary, because he was unarmed when he entered the house. He asserts that a burglary is complete upon entry. Therefore, he reasons that since he armed himself with the knife after entering the house, a necessary element of the offense, the commission of a felony while armed with a dangerous weapon, was absent from the State's case. The State agrees that the entry constituted burglary, but it argues that since the entry was the threshold of the crime; the burglary did not cease at this point but continued throughout defendant's unauthorized presence in the house. The State concludes that defendant's presence in the house after the seizure of the knife constituted burglary while armed with a dangerous weapon in contravention of the armed violence statute.

The armed violence statute reflects the policy of this State to reduce the violence attendant to crime by creating an incentive to avoid the commission of felonies while armed. Thus, armed felons are punished more severely than unarmed felons for the same acts. (Ill. Rev. Stat. 1977, ch. 38, pars. 33A—3, 1005—8—1.) Section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) states:

> "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law."

It is a truism that a felony is committed the instant all proscribed acts deemed essential to its commission are performed, assuming the actor possesses the requisite mental state during the performance of the acts. If a person arms himself after the commission of the felony is complete, there would be no violation of the statute for the reason that the arming would not coincide with the commission of the underlying felony. In deciding this issue we must examine the record to ascertain the time of commission of the underlying burglary to determine whether the arming coincided with the commission of the felony.

Count I of the indictment charges defendant as follows:

> "Defendant, while armed with a dangerous weapon, a knife, having a blade of at least three (3) inches in length, a category 1

weapon, committed a felony defined by Illinois law, to wit, burglary, in violation of chapter 38, section 19—1a, Illinois Revised Statutes, in that he without authority, knowingly entered a building * * * with the intent to commit therein a theft."

The only act necessary for the offense of burglary as required by the charging document and by section 19—1(a) is a knowing, unauthorized entry of a building with the intent to commit therein a felony or theft. The uncontroverted testimony at trial is that the knife belonged to the Muellers and was customarily stored in a kitchen drawer. No evidence was introduced suggesting that the knife was other than in the possession and control of the Muellers at the time entry was made. The only conclusion which can be reached from the evidence is that entry was gained while defendant was unarmed. Therefore, the record cannot support a judgment finding defendant guilty of armed violence with respect to the burglary. Our conclusion that the defendant was not armed when the offense of burglary was committed is supported by the decisions in *People v. Wilfong* (1979), 72 Ill. App. 3d 268, 390 N.E.2d 934; *People v. Crawford* (1978), 59 Ill. App. 3d 211, 375 N.E.2d 1314; and *People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510, which hold that a burglary is complete when a person knowingly enters into or remains within a building without authority with the intent to commit a felony or theft.

The State contends that armed violence is analogous to felony murder in the sense that each offense necessitates a finding that during its commission the person so engaged was in the process of committing some other felony. The State, relying on *People v. Nixon* (1939), 371 Ill. 318, 20 N.E.2d 789, a case in which a felony murder conviction was affirmed where the acts causing death were performed in a home after it was broken into, asserts that the offense of burglary continues beyond the original entry. The State concludes that since a burglary continues after entry for purposes of felony murder, it also continues for purposes of armed violence. We cannot accept this line of reasoning.

Felony murder as defined by section 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3)) is as follows:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
* * *

(3) He is attempting or committing a forcible felony other than voluntary manslaughter."

Under the felony-murder doctrine the language "attempting or committing a forcible felony" traditionally has been construed to include acts causing death which are causally related to the felony. Thus, such acts need not coincide with the felony as to time of occurrence but may

occur before or after the felony. (La Fave & Scott, Criminal Law §71, at 555 (1972).) In adhering to this tradition our supreme court has gone beyond the literal meaning of the statute and has sustained felony murder convictions where the acts causing death were performed after the commission of a felony. *People v. Johnson* (1973), 55 Ill. 2d 62, 302 N.E.2d 20 (defendant had left the scene of a robbery when an accomplice fatally shot the owner); *People v. Bongiorno* (1934), 358 Ill. 171, 192 N.E. 856 (defendant's accomplice in a robbery had temporarily escaped, then returned and shot and killed an officer who had apprehended defendant).

We are of the opinion that the causal relationship test employed by the felony murder doctrine is not applicable to the armed violence statute. To do so would violate the fundamental principle that criminal statutes must be strictly construed in favor of the accused. (*People v. Van Cura* (1974), 21 Ill. App. 3d 269, 315 N.E.2d 149; *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 202 N.E.2d 473.) "* * * [N]othing is to be taken by intendment or implication against him [defendant] beyond the obvious or literal meaning of such statutes. [Citations.]" *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 539, 202 N.E.2d 473, 475. ■ A literal reading of the armed violence statute indicates that a person must be armed during the commission of the underlying felony in order to constitute the offense of armed violence. As we have already noted, the offense of burglary is completed when the illegal entry is made with the requisite intent. Accordingly, we reverse the judgment of the trial court as to count I of the indictment.

The second issue raised by defendant on appeal is that the evidence at trial was not legally sufficient to establish his guilt of armed violence based on the underlying felony of aggravated battery. He asserts that the evidence relating to the use of the knife as a weapon was used to prove the necessary elements of both the underlying felony of aggravated battery and the armed violence. Stated another way, defendant contends that the State cannot rely on the same evidence, the knife, to prove the armed violence after it had used it to elevate the offense of simple battery to aggravated battery. This contention has been rejected in *People v. Gross* (1977), 52 Ill. App. 3d 765, 367 N.E.2d 1028, and, likewise, is rejected here.

In *Gross*, among other offenses, defendant was convicted of four counts of armed violence based upon the underlying felony of aggravated assault. The armed violence arose out of a shooting incident in which defendant discharged a shotgun into a house, injuring a person inside. To prove the armed violence the State had to show that defendant was armed with a dangerous weapon while committing the aggravated assault. (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2.) To prove the aggravated assault, the State was required to show that during the commission of the

assault the defendant was armed with a deadly weapon and that he placed the victim in apprehension of receiving bodily harm. (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1).) The defendant argued that since the evidence revealed the use of only one gun, one of the requisite elements of the armed violence offense could not be proved because the gun would thus be used as evidence for a twofold purpose. In rejecting this argument and affirming the convictions, the *Gross* court held that armed violence could include assault with a deadly weapon. Through its affirmance, the court in effect held that evidence used to prove armed violence could be identical to that used to prove an element of the underlying felony. The present case concerns a different underlying felony, aggravated battery; nevertheless, we find *Gross* apposite.

Defendant argues in the alternative that assuming the evidence were adequate to establish his guilt, such a judgment could not stand for the reason that the armed violence statute denies him due process and equal protection. According to him, the statute fails to give fair notice that conduct of the type occurring in this case is prohibited. Moreover, he asserts that the statute is prone to arbitrary and erratic application. However, the State correctly notes in its brief that this constitutional challenge was raised for the first time in defendant's post-trial motion. It is well settled that a constitutional challenge not raised in the trial court cannot be entertained for the first time on review. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) Defendant chose to wait until his case had been prosecuted before bringing the issue to the attention of the trial court in his post-trial motion. This was too late for the trial court to properly consider the issue. Therefore, the issue is untimely and will not be considered by this court.

For the reasons stated above, we affirm the judgment of the trial court finding defendant guilty of armed violence based upon the underlying felony of aggravated battery.

In his third ground for reversal, defendant contends that the trial court abused its discretion in granting the State's motion certifying him as an adult for purposes of criminal prosecution.

A trial court in ruling upon such a motion is governed by section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)(a)) and must take the following matters into account:

"(1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the

minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

The court in its sound discretion must determine if the evidence at the certification hearing warrants a transfer in light of the statutory criteria, but it is not required to resolve every factor against the juvenile in order to justify transfer from the juvenile to criminal court. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

At the certification hearing Sergeant Gregory Cox, an East St. Louis police officer assigned to its juvenile division, gave testimony regarding the events which transpired in the Mueller home on the night of the incident. He stated that after entering the house, defendant went immediately to the kitchen and armed himself with a knife. His testimony concerning defendant's other activities in the house was substantially similar to the accounts given by Mr. and Mrs. Mueller at trial and need not be repeated here.

Lucky Hollander, an employee of the Alton Adolescent Services Program, an agency operating under contract with the Illinois Department of Children and Family Services (DCFS), presented testimony concerning defendant's behavioral history under the guardianship of the DCFS. She explained that defendant was brought before the court on a delinquency petition in 1976. Pending the appointment of a guardian, he was placed in the Hoyleton Children's Home and stayed there approximately a year before being asked to leave due to his suspected involvement in a burglary incident in the town of Hoyleton. At the home his behavior was characterized as violent and aggressive at times and directed toward staff and residents. He became increasingly uncontrollable as his stay continued. He bullied children and was not liked by many of the residents. After departing Hoyleton, he was placed in a foster home in Alton and then sent to the Illinois Soldiers and Sailors Service Center (ISSSC), another children's home. At ISSSC he participated in a number of fights, including one in which he severely beat a student much smaller than himself. Eventually his behavior became so violent that he could not be adequately handled by the staff. He was transferred out of ISSSC and placed in a detention home. Mrs. Hollander concurred in a report prepared by a caseworker assigned to defendant which concluded that defendant displayed sociopathic behavior and has exhausted all DCFS programs.

Cheryl Probst, a psychologist, testified that on the basis of her psychological evaluation of defendant, he still possessed antisocial behavioral traits. She was of the opinion that his past violent behavior would continue with little hope of improvement in the near future.

At the conclusion of the hearing and after reviewing the statutory

requirements governing a transfer from juvenile jurisdiction, the trial court made the following findings of fact: (1) there was probable cause to believe that a grand jury would return an indictment on the charges alleged in the petition; (2) there was evidence that the alleged offenses were committed in an aggressive and premeditated manner; (3) the minor (defendant) was 13 years of age, having been born on January 22, 1965; (4) there was a lengthy history of delinquent behavior involving court intervention and documentation by case workers involved with rehabilitation with the minor (defendant); (5) there were no juvenile facilities available to the Juvenile Court that could treat or rehabilitate the minor (defendant); and (6) the best interest of the minor (defendant) and security of the public may require the minor to remain in custody or under supervision for a period extending beyond his age of minority. Thereupon, the court granted the State's motion.

Defendant takes exception to four of the findings of fact. First, he disputes the finding that he acted in a premeditated manner once inside the house. He asserts that such acts could only be described as being spontaneous. We cannot agree. The evidence shows that defendant armed himself immediately upon entry. When confronted by the Muellers, he isolated them by locking Mr. Mueller in the basement. Then he sexually assaulted Mrs. Mueller. We believe that his actions were deliberate and calculating. He armed himself, confronted and isolated his victims, and sexually assaulted Mrs. Mueller only after taking precautions to prevent Mr. Mueller from alerting the authorities. Defendant's behavior could hardly be termed spontaneous.

The defendant's second exception centers around his age. He asserts that the trial court failed to give proper consideration to his young age. Although he concedes that he was technically old enough to be certified an adult, he argues nonetheless that his age should have been a factor favoring treatment within the juvenile system. However, whatever weight may be accorded to his age was negated by his prior history of violent and uncontrollable behavior within that system. He has demonstrated that despite his age all efforts aimed at rehabilitating him through the system have failed.

Defendant's third exception attacks the finding that no juvenile facilities were available to treat and rehabilitate defendant. The testimony of Mrs. Hollander was that he had exhausted all DCFS programs. The record cites numerous incidents of violent and uncontrollable behavior on defendant's part while a resident of various children's homes. The psychological opinion rendered by Ms. Probst indicated that defendant would not show any marked improvement in the foreseeable future. It is apparent from the record that defendant could

be neither controlled nor rehabilitated in a juvenile facility and would not benefit from further treatment within the DCFS.

Finally, defendant argues that the best interests of the defendant and the public at large do not require incarceration for a period exceeding his minority. Again, his steadily deteriorating behavior while at various juvenile facilities and the danger he poses to the public as manifested by the attack upon Mrs. Mueller more than justify incarceration beyond minority.

■■ Our examination of the record indicates that the trial court gave careful consideration to the statutory criteria set out in section 2—7(3)(a) and that the evidence supported its findings of fact. Therefore, we hold that the trial court did not abuse its discretion in ruling on the motion to try defendant as an adult.

Finally, defendant contends that the sentences imposed were based upon matters improperly considered by the trial court and were excessive. With respect to the improper considerations, he asserts that the trial court in passing sentence gave undue weight to numerous prior arrests which did not result in any adjudication of delinquency. He relies on a statement made by the court during sentencing which is as follows:

> "Defendant has a history of prior delinquency or criminal activity. That indeed he does."

He also points to the contrast between the severity of the sentences imposed and his previous record which consists of only one nonviolent delinquency as being indicative of the court's consideration of his prior arrests.

It is well settled that evidence of an arrest not resulting in a conviction may not be relied on by a trial judge in determining sentence. (*People v. Jones* (1976), 36 Ill. App. 3d 491, 344 N.E.2d 40; *People v. Lemke* (1975), 33 Ill. App. 3d 795, 338 N.E.2d 226; *People v. Pohle* (1974), 19 Ill. App. 3d 400, 311 N.E.2d 731.) However, a court may inquire into the offense precipitating such an arrest if the inquiry would aid the court in determining the defendant's potential for rehabilitation, if the inquiry constitutes a complete presentation of the facts and circumstances surrounding the charge, and if defendant has an opportunity for confrontation, cross-examination and rebuttal. (*People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415; *People v. Jones*; *People v. Lemke*.) The prior arrests complained of were enumerated in a presentence investigation dated July 17, 1978. The report listed 17 arrests on various charges, but only one arrest for a robbery offense led to an adjudication of delinquency. Aside from the report and the results of a supplemental presentence investigation, no further evidence was offered in aggravation by the State. The evidence establishing the existence of a

juvenile record consisted of nothing more than what could be characterized as a rap sheet. The failure to explain in depth the facts and circumstances attendant to the charges underlying the arrests necessarily precludes the trial court from relying on the arrests not resulting in a finding of delinquency in sentencing defendant.

We must examine the record at the sentencing hearing to ascertain whether any improper reliance did in fact take place. The only reference to prior arrests cited by defendant is the trial court's statement to the effect that he had a history of delinquency. However, this statement makes no specific mention of the arrests. Moreover, it is reasonable to interpret this statement as referring to defendant's prior adjudication of delinquency. We cannot say on the basis of this cursory statement that the trial court assessed the length of the sentences on the basis of defendant's prior arrests. Nor can we discern any reliance on the prior arrests from the severity of the sentences imposed by the court. Defendant places great emphasis on the fact that his prior delinquency was nonviolent. He asserts that since his prior delinquency standing alone would not merit such heavy sentences, the trial court had to rely on the earlier arrests. We cannot agree. Defendant's contention does not take into account the violent nature of the instant offenses. He accosted an elderly couple with a knife in their own home and then sexually assaulted the woman. Such behavior should obviously figure prominently in determining sentence.

■■ Defendant also charges that the sentences imposed were excessive. Relying on *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, he contends that the presumption that the sentences were properly imposed is overcome by the failure of the trial court to give due weight to factors in mitigation, defendant's age, circumstances surrounding the offense, and his prior record. Our examination of the record convinces us that the violent and aggressive nature of defendant's conduct justifies the sentences he received regardless of his age or prior record.

Affirmed in part; reversed in part.

JONES, P. J., and KARNS, J., concur.