THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEREK SCOTT BUCKNER, Defendant-Appellant.

Fourth District   No. 4—89—0570

Opinion filed September 25, 1990.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

The defendant murdered his wife, by inflicting multiple stab wounds, and then stole her car. A Macon County jury convicted the defendant of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)), armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2), and burglary (Ill. Rev. Stat. 1987, ch. 19—1(a)). On appeal the defendant raises issues involving the constitutionality of section 9—2 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 9—2), reasonable doubt, and his 40-year sentence for first-degree murder. We affirm the convictions and sentence.

The defendant and his wife, Vivian, were married on June 6, 1985. The defendant was then 19 years old and Vivian was 26 years old. Six months later their daughter was born. The parties separated in 1987 but continued to see each other almost daily and continued sexual relations.

The defendant worked the 11 p.m. to 7 a.m. shift at Revere Copper and Brass Company in Clinton, Illinois, on December 18, 1988. Before he left for work that evening, the defendant received a telephone call from an anonymous caller who told him Vivian was at a Decatur tavern, Windy O'Leary's (O'Leary's), with another man. The defendant persuaded the man driving him to work that evening to stop at O'Leary's on the way to Clinton. The two men went into the tavern in search of Vivian, but were told by her friends that she had

left one hour before. Her car was in O'Leary's parking lot. The defendant remained at O'Leary's, but his friend went to work.

At trial, the defendant testified he then walked toward a Jewel store to make a telephone call. He changed his mind, turned around, and walked back toward O'Leary's. He saw a car drive into O'Leary's parking lot and pull into the parking space next to Vivian's car. As he got closer to the car he saw two people in it, talking. The male in the car then leaned toward the female to kiss her. When the woman turned her head to kiss her companion, the defendant recognized her as Vivian.

The defendant testified he went to the passenger side of the car and tapped on the window and Vivian exited the car. The defendant did not know the man in the car, David Rogers. The defendant asked his wife what was going on. Rogers got out of the car, walked up to the defendant, and the two exchanged words. Vivian twice stepped between them to break up the altercation, and the defendant twice pushed her aside with his left hand. He held an open knife in his right hand. Vivian was screaming at Rogers that the defendant had a knife.

"[Defense counsel]: What was going through your mind at that time?

[Defendant]: I have—I have never seen Vivian with any-body—another male, let alone kissing another male. I didn't know what was going on.

[Defense counsel]: Did you feel your marriage was ending?

[Defendant]: Yeah, I—you know, I thought it was over with, she didn't want to be with me. I wasn't sure. I wasn't sure what was going on. I couldn't think right."

Rogers got into his car and drove away. The defendant then noticed Vivian had blood on her pant leg, and he offered to take her home. She refused and instead went inside O'Leary's.

The defendant walked around the parking lot for a few minutes. He found Vivian's purse lying next to her car on the parking lot and searched it for her car keys. He took the keys and drove away in her car. He testified he did not know she had been seriously injured.

On cross-examination the defendant admitted he remembered telling police, shortly after his arrest, that he stabbed his wife more than two times and the stabbing was not accidental. At trial, however, he testified he had no memory of stabbing Vivian. While "driving around," the defendant wrecked the car. He was subsequently arrested.

Rogers' trial testimony differs significantly. He testified he never exited his car. When Vivian got out of his car, the defendant punched

her in the stomach and pushed her against her car. Vivian was screaming, "David, he has a gun!" Rogers repeatedly assured the defendant that Vivian "didn't do anything," but the defendant continued pushing her, now toward O'Leary's. Rogers never saw a knife. He left the scene to avoid exacerbating the situation.

Dr. Frantz Charles, a surgeon, performed emergency surgery on Vivian. He testified she received five stab wounds. The only fatal wound was a two-centimeter hole in her left ventricle. Vivian died from a loss of blood resulting from this stab wound to her heart.

The jury found the defendant guilty of first-degree murder, armed violence, and burglary. The defendant filed a motion for a new trial, but the motion was denied. The trial court, on its own motion, vacated the armed violence conviction and sentenced the defendant to 40 years for first-degree murder and 3 years for burglary, the sentences to run concurrently.

The first issue the defendant raises on appeal is whether the requirement that the defendant show, by a preponderance of the evidence, that he acted under sudden and intense passion to be convicted of second-degree rather than first-degree murder violates the due process clause of the United States Constitution. At trial, the defendant objected to People's instruction No. 6, which stated:

"The defendant is presumed to be innocent of the charges against him, including the charge of first degree murder. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving that the defendant is guilty of first degree murder, armed violence and burglary, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence.

If the State proves beyond a reasonable doubt that the defendant is guilty of first degree murder, the defendant then has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder, and not guilty of first degree murder. In deciding whether a mitigating factor is present, you should consider all of the evidence bearing on this question."

(See Illinois Pattern Jury Instructions, Criminal, No. 2.03A (2d ed. Supp. 1989).) The defendant contended the instruction improperly shifted the burden of proof to him, but his objection was overruled.

He did not, however, object to the constitutionality of the second-degree murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) until the post-trial motion. Because he failed to raise the issue prior to the jury's verdict, the State argues this court may decline to review the issue.

The State cites a fifth district case in which that court refused to consider a constitutional challenge to a statute raised for the first time in a post-trial motion. (*People v. Jones* (1980), 86 Ill. App. 3d 253, 408 N.E.2d 79.)

"It is well settled that a constitutional challenge not raised in the trial court cannot be entertained for the first time on review. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) Defendant chose to wait until his case had been prosecuted before bringing the issue to the attention of the trial court in his post-trial motion. This was too late for the trial court to properly consider the issue. Therefore, the issue is untimely and will not be considered by this court." *Jones*, 86 Ill. App. 3d at 258, 408 N.E.2d at 84.

■ This is no longer the law in Illinois. A constitutional challenge to a statute can now be raised at any time. (*People v. Bryant* (1989), 128 Ill. 2d 448, 453-54, 539 N.E.2d 1221, 1223-24.) The *Bryant* court stated that in *People v. Frey* (1973), 54 Ill. 2d 28, 29-33, 294 N.E.2d 257, 258-59, it specifically overruled *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353. (See generally *People v. Felella* (1989), 131 Ill. 2d 525, 536, 546 N.E.2d 492, 496.) In *People v. Wade* (1989), 131 Ill. 2d 370, 375-76, 546 N.E.2d 553, 555-56, the court stated:

"This court has previously stated that a constitutional challenge to the statute on which a criminal conviction is based may be raised at any time. (*People v. Bryant* (1989), 128 Ill. 2d 448, 453-54; *People v. Zeisler* (1988), 125 Ill. 2d 42, 46; *People v. Sarelli* (1973), 55 Ill. 2d 169, 170-71.) Other cases, however, have suggested that a defendant's failure to raise a constitutional challenge to a statute may be deemed waived if the issue was not presented in the circuit court. [Citations.] Before invoking the plain error exception, it is appropriate to determine whether error occurred at all. (See *People v. Young* (1989), 128 Ill. 2d 1, 54; *Precup*, 73 Ill. 2d at 17.) Because we conclude that no error occurred in the present case, we need not determine whether such a challenge may ever be deemed waived."

■ The Code was amended in 1987 and second-degree murder replaced voluntary manslaughter. Pub. Act 84—1450, §2, eff. July 1, 1987 (1986 Ill. Laws 4221, 4233-34).

"Under the old homicide statute, the State had the burden to prove, beyond a reasonable doubt, the elements of murder. (*People v. Reddick* (1988), 123 Ill. 2d 184, 197.) The defendant then had the opportunity to present evidence of a factor in mitigation, serious provocation or unreasonable belief, either of which must have been present to reduce an offense of murder to voluntary manslaughter. (123 Ill. 2d at 197.) The State then had the burden to prove, beyond a reasonable doubt, the absence of the factor in mitigation. (123 Ill. 2d at 198.) Under the new Act, the State still bears the burden to prove, beyond a reasonable doubt, the elements of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) However, the defendant now bears the burden to prove, by a preponderance of the evidence, one of the factors in mitigation which must be present to reduce an offense of first degree murder to second degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) Thus, the new Act not only requires the defendant to come forward with *some* evidence of a factor in mitigation; it requires the defendant to prove, *by a preponderance of the evidence*, a factor in mitigation." (Emphasis in original.) *People v. Shumpert* (1989), 126 Ill. 2d 344, 351-52, 533 N.E.2d 1106, 1109.

■ In 1970, the United States Supreme Court held "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068,1073.) Five years later, the Court held the States cannot shift, to the defendant, the burden of proving an element of the crime charged. (*Mullaney v. Wilbur* (1975), 421 U.S. 684, 703, 44 L. Ed. 2d 508, 521, 95 S. Ct. 1881, 1892.) The *Mullaney* case involved Maine statutes recognizing two forms of homicide: murder and manslaughter. The crimes shared two common elements: each had to be unlawful and each had to be intentional. If each element was proved beyond a reasonable doubt by the State, then the jury could consider the differences between the crimes. Malice aforethought was an essential element of murder to be conclusively implied unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation. If the defendant made such a showing, the jury could convict him only of manslaughter. The statute thus affirmatively shifted the burden of proof to the defendant and required him to prove the critical fact in dispute. (*Mullaney*, 421 U.S. at 701, 44 L. Ed. 2d at 520, 95 S. Ct. at 1890.) The Court held "the Due Process Clause requires the prosecution to

prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney*, 421 U.S. at 704, 44 L. Ed. 2d at 522, 95 S. Ct. at 1892.

In *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, the Court approved a New York statute which required a defendant, charged with second-degree murder, to prove by a preponderance of the evidence an affirmative defense of emotional disturbance, in order to reduce the crime to manslaughter. The prosecution was required to prove all the elements of the crime charged. Then the burden shifted to the defendant to prove the elements of an affirmative defense.

Finally, in *Martin v. Ohio* (1987), 480 U.S. 228, 94 L. Ed. 2d 267, 107 S. Ct. 1098, the defendant, charged with aggravated murder, sought to reduce that using the affirmative defense of self-defense. As in *Patterson*, the State was first required to prove all elements of aggravated murder, the crime charged. The defendant was then given an opportunity to justify the killing by proving, by a preponderance of the evidence, that she acted in self-defense. The Court approved the statute, finding it did not deny the defendant due process.

■ Based on these United States Supreme Court cases we conclude the Illinois statute is constitutional. Section 9—2 of the Code does not require the defendant to prove any elements of first-degree murder. The jury does not even reach a consideration of second-degree murder until and unless it determines the State has proved first-degree murder beyond a reasonable doubt. This statute does not present the constitutional problems found in the *Mullaney* statutes. The statute is similar to statutes approved by the Court in *Patterson* and *Martin*.

The defendant argues section 9—2 of the Code unconstitutionally places the burden of proof on him, and is analogous to *Mullaney* rather than *Patterson*. The defendant contends the new second-degree murder statute retains all of the substantive law previously applicable to the offense of voluntary manslaughter. Obviously this can be so only insofar as the terms of the amended section remain unchanged. See generally 1A N. Singer, Sutherland on Statutes & Statutory Construction §22.33, at 288 (Sands 4th ed. 1985).

The defendant cites *People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335, as support for his position. The *Hoffer* defendant was charged with three counts of murder. The jury convicted him of murder, voluntary manslaughter, and involuntary manslaughter under the "old" statutes. The Illinois Supreme Court concluded the three ver-

dicts were logically and legally inconsistent as the mental states for the offenses were mutually inconsistent. *Hoffer*, 106 Ill. 2d at 195, 478 N.E.2d at 340.

Thus the defendant here argues that if the new statute, section 9—2, defining second-degree murder, retains all the substantive law previously applicable to voluntary manslaughter, then the State should bear the burden of disproving second-degree murder. He contends the new statute is unconstitutional because it places this burden on the defendant.

■ We reject this argument as contrary to the plain meaning of the statute as amended. Public Act 84—1450 substantively rewrote section 9—2 of the Code, specifically incorporating as subsection (c) a burden-shifting explanation (1986 Ill. Laws 4221, 4233-34) which the predecessor section did not have (see Ill. Rev. Stat. 1985, ch. 38, par. 9—2). Subsection (c) provides:

> "When a defendant is on trial for first degree murder and evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented, the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code. In a jury trial for first degree murder in which evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(c).)

By its terms it is only when the defendant is charged with first-degree murder and seeks to present the trier of fact with the option of convicting him of the lesser offense of second-degree murder that he has any burden of proof. To this extent, the second-degree murder statute functions as a defense against the first-degree murder charge, which the State is still required to prove *before* the trier of fact con-

siders whether the mitigating factors were shown by a preponderance and, if it so finds, the State must disprove such factor(s) by proof beyond a reasonable doubt.

If instead the defendant is charged with second-degree murder, the State will prove first-degree murder and concede (or prove) the mitigating factors, and the burden of proof on the mitigating factors never shifts to defendant, though he may choose to present a defense. *Hoffer* is distinguishable on its facts. There, the defendant was charged with three forms of homicide and the jury returned inconsistent verdicts. The defendant in this case was only charged with and convicted of first-degree murder.

For these reasons, we conclude section 9—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 9—2), which requires the defendant charged with first-degree murder to prove, by a preponderance of the evidence, that he acted under sudden and intense passion in order to be convicted of second-degree rather than first-degree murder, does not violate the due process clause of the United States Constitution.

The second issue the defendant raises asserts the State failed to prove beyond a reasonable doubt that he committed burglary by entering his wife's car with intent to commit a theft therein, because the evidence showed he had driven his wife's car on prior occasions with her permission. In July 1988, after she and the defendant separated, Vivian purchased a 1984 Honda Prelude. Her father cosigned the loan for the car. The defendant's name was not on the title or loan agreement. At the time of the murder, the defendant did not own a car. At trial, and on appeal, the parties' arguments focus on whether the defendant had Vivian's permission to use the car. Her father testified he never gave the defendant permission to drive the car. Vivian had sole authority to determine who could drive her car.

The defendant testified he occasionally drove Vivian's car, sometimes to and from work in Clinton. The defendant's neighbor testified he saw the defendant driving the car on occasion, as did the defendant's mother and father. The week before the murder, the defendant's friend Todd Baum and his wife accompanied the defendant and Vivian to a Decatur restaurant for dinner. The defendant drove Vivian's car. The day before the murder the defendant drove Vivian's car to the store where she was working to purchase Christmas gifts for their daughter.

> "[Defense counsel]: Did Vivian give you a set of keys to the car?
>
> [Defendant]: No, she told me that she had got locked out.
>
> * * *

[Defendant]: She had got locked out of the car on a couple of occasions. And I believe her dad had an extra set of keys. Then she had an extra set. I had an extra set made. So I kept a key set.

[Defense counsel]: Did you do that with her knowledge?

[Defendant]: Yes, sir. We went to True Value together and got the key made."

After the defendant stabbed Vivian and she went into O'Leary's, he searched her purse for her car keys and took her car. The defendant admitted on cross-examination that Vivian had not given him permission to use her car on the night of the murder. While incarcerated in the Macon County jail, the defendant telephoned a friend and told her he took Vivian's car after the stabbing and tried to wreck it. "He was trying to kill himself, but he couldn't. He tried three times to wreck the car and the third time was when he was arrested."

■ The burglary statute states, in pertinent part: "A person commits burglary when without authority he knowingly enters or without authority remains within a *** motor vehicle *** with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1987, ch. 38, par. 19—1.) The defendant admitted he entered the car after the stabbing without authority when he admitted on cross-examination that Vivian had not given him permission to drive her car that night. The State proved lack of authority.

■ The next element the State must prove beyond a reasonable doubt is intent. The defendant must have made an unauthorized entry into Vivian's car after the stabbing with the intent to commit a felony or theft. The defendant interprets the statute to mean he must have intended to commit a theft within the car, but theft of the car itself does not render him guilty of burglary. This argument has been rejected by other courts.

"[I]t is manifest that the defendant committed a burglary when he entered the victim's automobile with the intent to steal it. There is nothing in the statutory language itself that restricts the scope of section 19—1(a) of the Criminal Code of 1961 to situations in which the defendant steals or intends to steal something from the interior of the automobile, as opposed to attempting to steal or actually stealing the vehicle itself." (*People v. Mullinex* (1984), 125 Ill. App. 3d 87, 90, 465 N.E.2d 135, 137-38.)

Otherwise, a person who entered a car to steal something from within would be punished for burglary but a person breaking in to steal the car itself would be guilty of theft only. *Mullinex*, 125 Ill. App. 3d at

90, 465 N.E.2d at 138; see also *People v. Sansone* (1981), 94 Ill. App. 3d 271, 418 N.E.2d 862.

■ The defendant argues there was no evidence he intended to permanently deprive Vivian of her car. The State counters that the defendant's desire to commit suicide by wrecking the car is evidence the defendant did possess such intent. The jury could properly infer from the evidence that the defendant sought to commit suicide by wrecking the car, that he intended to permanently deprive Vivian of it.

The defendant also argues public policy considerations preclude a conviction for unauthorized entry into a spouse's vehicle where there has been no legal separation. The defendant asserts a contrary holding could result in an increased use of the Code by individuals who are suffering through marital discord. Although the car was marital property, we conclude the defendant was properly convicted of burglary.

In *People v. Schneider* (1985), 139 Ill. App. 3d 222, 487 N.E.2d 379, the defendant was convicted of criminally damaging his wife's property. (Ill. Rev. Stat. 1983, ch. 38, par. 21—1(a).) At the time, he and his wife had been separated for two months and were involved in dissolution proceedings. On appeal he argued the State failed to prove the damaged property was the "property of another" as his wife purchased the car during the marriage.

The fifth district noted the Criminal Code of 1961 did not define "property of another," though the definitional section of article 2 of the Code defined " 'another' " as " 'a person or persons *** other than the offender.' " (*Schneider*, 139 Ill. App. 3d at 224-25, 487 N.E.2d at 380, quoting Ill. Rev. Stat. 1983, ch. 38, par. 2—3.) The court stated:

> "We are convinced, nevertheless, that the legislature intended 'property of another,' as used in section 21—1, to encompass a broad spectrum of possessory interests in property. The arson statute, also designated in Part C, defines 'property of another' as 'property *** in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the *** property.' (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.) Although this language was not included in section 21— 1, we believe that its broad scope is pertinent to the semantic issue presented here.
>
> Assuming for the sake of argument that the instant defendant maintained a property interest in the Polara at the time of

the offense, he cannot be said to have a right, by virtue of his part ownership, to harm the interest of another person in that same property. Section 21—1 must be read to impose criminal responsibility on a person who damages another's interest in property, regardless of whether ownership of the property in question is shared. As the arson statute, the criminal damage provision was designed to protect the property of individuals from criminal harm. To relieve defendant from culpability for his acts disdains the plain legislative intent." *Schneider*, 139 Ill. App. 3d at 224-25, 487 N.E.2d at 380-81.

In *People v. Wyant* (1988), 171 Ill. App. 3d 306, 525 N.E.2d 591, the defendant and the complainant were divorced with the complainant receiving sole and exclusive possession of the marital home. Pending the sale of the home, title remained in joint tenancy. After the divorce but before the sale, the defendant entered the property and was charged with criminal trespass to land. The third district affirmed the trial court order dismissing the charges. "[T]he defendant did no damage to the joint property interest of his ex-wife. He merely entered upon the property in which he had an equal interest." *Wyant*, 171 Ill. App. 3d at 307, 525 N.E.2d at 592.

Analogy to these cases supports our conclusion that although the car may have been marital property, the defendant could nevertheless be convicted of burglarizing the car. Clearly the defendant drove the car only with Vivian's permission. On the night of the murder he did not have her permission to enter or drive the car, as he admitted at trial. The jury's verdict on this issue was not contrary to the manifest weight of the evidence and should be affirmed.

Finally, the defendant argues the 40-year sentence was excessive because the court failed to consider his potential for rehabilitation, his age, and work record. He also claims he exhibited substantial remorse for killing his wife. The record does not support the latter claim. Officers who arrested and subsequently interviewed the defendant testified he remained calm and never exhibited any emotion, even after learning Vivian was dead. The defendant did make an apology to family and friends at his sentencing hearing, but this hardly qualifies as "substantial remorse."

The defendant was violent toward Vivian on several occasions before the murder and damaged another woman's property. Shortly after the defendant and Vivian separated in October 1987, the defendant saw Vivian at O'Leary's with another man. He waited in a car at her house for her to arrive home. When she arrived, he rammed his vehicle into her car and knocked it into a telephone pole. He then

backed up, hit her car two more times and left the scene. He testified he did this to keep Vivian from entering her house so he could talk to her. Before this incident, on the same evening, the defendant entered Vivian's house and destroyed a vanity and mirror and poured kerosene on clothing lying on a bed.

At the sentencing hearing, Michelle Switzer testified the defendant was a passenger in her car one evening during the summer of 1986. Vivian approached the car and slapped Michelle. The defendant got out of the car and struck Vivian's face several times.

Decatur police officer Robert Davis testified that on February 8, 1987, the defendant told him, during a custodial interview, that he put sugar into the gas tank of Wendy Bryner's car to keep her from leaving him. The defendant then stated he knew their affair was over and promised not to bother Bryner again.

> "Illinois incorporates the rehabilitative potential of the accused as a factor in prescribing penalties. (See Ill. Const. 1970, art. I, §11; Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—2.) This factor is not, however, entitled to any greater weight than the remaining factors. (*People v. Gaines* (1981), 88 Ill. 2d 342, 382, 430 N.E.2d 1046, 1066; *People v. Reid* (1987), 160 Ill. App. 3d 491, 493, 513 N.E.2d 517, 518.) The circuit court may, in its discretion, determine and impose the sentence on the defendant in excess of the minimum provided by statute." *People v. Moore* (1989), 189 Ill. App. 3d 957, 965, 546 N.E.2d 232, 237.

■■■ The trial court has discretion in sentencing a defendant. The sentence will not be disturbed on appeal absent an abuse of discretion. (*Felella*, 131 Ill. 2d at 541, 546 N.E.2d at 499.) None of the cases cited by the defendant involve first-degree murder and are therefore distinguishable. The record supports the trial court's reasons for imposing the 40-year sentence. The trial court did not abuse its discretion when it sentenced the defendant to 40 years' imprisonment for first-degree murder.

The judgment of the circuit court of Macon County is affirmed.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.