[No. B072462. Second Dist., Div. One. Dec. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARD TEAMER, Defendant and Appellant.

**COUNSEL**

Leonard Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray, John R. Gorey, Garrick W. Chock and Sanjay T. Kumar, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—Bernard Teamer contends his conviction of vehicular burglary must be reversed because the only felony he intended to commit when he broke into a car was the theft of the car he broke into. We disagree, and therefore affirm his conviction.

FACTS

At about 8:30 p.m. one evening, Valencia Oldham parked her red Nissan in front of her house, locked the car, went into her house and ultimately went to bed. At about 2 a.m. the next morning, Ken Oldham (Valencia Oldham's nephew who was spending the night with his aunt) was awakened by noises coming from the street. When he looked out the window he saw a man in his aunt's Nissan. As Ken Oldham watched, the man got out of the Nissan, walked to a black Hyundai parked on the other side of the street (facing in the wrong direction), and then returned to the Nissan with another man. Both men got into the Nissan.

At that point, Ken Oldham awakened his aunt. After grumbling that she didn't want to be bothered because she had to get up early to go to work, Valencia Oldham finally got up, looked out and saw someone sitting in her car. She called the police. Deputy Sheriff Ellen D. Horton arrived within minutes and stopped her patrol car next to the Nissan. The two men in the Nissan took one look at Deputy Horton, jumped out of the Nissan and ran away.

Valencia Oldham went out to examine her car. She found the lock on the driver's door had been "popped," the steering column had been cracked open, and wires were hanging from the column (which, to state the obvious, was not how she had left the car the night before). A screwdriver which wasn't hers was found on the floor of the car. Deputy Horton noticed the

black Hyundai parked the wrong way on the other side of the street and went over to look at it. Its windows were open, it was unlocked and its engine was warm. Ken Oldham told Deputy Horton that the two men had been in the Hyundai and a computer check led to the registered owner of the Hyundai, Sheila Akwal, who told Deputy Horton that her son, defendant Bernard Teamer, had borrowed the car the night before.

A few weeks later, Teamer was arrested and informed of the charges against him. After waiving his constitutional rights, he told Deputy Sheriff Mark Wedel that he didn't have anything to do with the attempted theft of the Nissan—he said he was at a party and suggested someone might have taken the keys to his mother's car. Deputy Wedel didn't believe Teamer and told him so. Matching fiction with fiction, Deputy Wedel concocted a story about an eyewitness identification—he told Teamer he had been identified from a photographic lineup and showed him a contrived photo lineup card with his picture.

Teamer bought it, hook, line and sinker. He confessed to Deputy Wedel that he had borrowed his mother's car and gone to a Halloween party. When the party was over, he left with an unnamed friend and, as they were driving, the friend said he wanted to steal a car. Teamer stopped the Hyundai, and his friend got out and broke into the Nissan while Teamer remained in the Hyundai. Minutes later, the friend came over to Teamer and asked for help. Ever obliging, Teamer got out of the Hyundai, walked over to the Nissan with his friend, and both men got into the Nissan. Teamer was behind the wheel, trying to cut some wires, when the sheriff's car drove up, at which point Teamer and his friend got out of the Nissan and ran away.

Teamer was charged with one count of second degree burglary of a vehicle (Pen. Code, § 459)[1] and one count of attempted grand theft auto (§§ 664, 487h, subd. (a) [since repealed and replaced by § 487, subd. (b)(3) (Stats. 1989, ch. 930, §§ 6.1, 12.5, pp. 3255-3256, 3266)].) Teamer pled not guilty and the case was tried to a jury. Teamer did not present any defense (perhaps because the trial court ruled that, if he testified, he could be impeached with a 1990 conviction of accessory to murder). Teamer was convicted as charged and sentenced to state prison for two years (midterm) on the burglary charge, with a six-month term on the attempted grand theft auto count imposed and stayed. Teamer appeals.

## DISCUSSION

Teamer contends the evidence is insufficient to support his conviction of vehicular burglary because his only intent at the time he entered the car was

---

[1]Unless otherwise stated, all section references are to the Penal Code.

to steal the car itself. More specifically, he concedes evidence of an attempt to steal a car will support a conviction of attempted grand theft auto but claims that same evidence will not support a conviction of vehicular burglary—unless accompanied by proof of an intent to commit a second felony inside the car. At trial, the People disagreed and argued to the jury that "[a] burglary occurs at the moment you enter someone else's locked vehicle with the intent to steal their car." On this appeal, the People argued instead that sufficient circumstantial evidence supports an implied finding that Teamer entered the car intending to find something in it to steal in the event he was unable to steal the car. We disagreed, and asked the People to file supplemental briefs on the precise issue raised by Teamer, which is the one we now address.[2]

## A.

ʼUnder the plain language of the statute, every entry into a house or other building or locked vehicle with the "intent to commit grand or petit larceny or any felony" is a burglary. (§ 459.)[3] In cases of nonconsensual entries into houses or other immobile structures, the intent inquiry necessarily focuses on what it is the defendant planned to do inside the structure—because criminals do not (at least in the cases we know about) enter houses or apartments or stereo stores with the intent to steal the house or apartment building or store. In cases involving structures (as opposed to vehicles), if the defendant's intent is to get out of the rain or to commit some other nonfelonious act once inside, he is guilty of a misdemeanor, not burglary.

---

[2]There is *no* evidence (circumstantial or otherwise) supporting the argument that Teamer intended to do anything other than steal the car. Although it is true, as the People note, that Ken Oldham saw Teamer and his friend look around inside the car, that fact is a meaningless abstraction in light of the evidence of the broken steering column, the dangling wires and Teamer's confession, all of which point only to an intent to steal the car, not an intent to break into it to see if there was anything inside worth stealing. (*People* v. *Tatge* (1963) 219 Cal.App.2d 430, 436 [33 Cal.Rptr. 323] [an inference may not be based on suspicion alone, or imagination, speculation, surmise, conjecture or guesswork].)

[3]In its entirety, section 459 provides: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises."

(See e.g., §§ 602.5 [simple trespass], 603 [forcible entry with vandalism].) It is only when he intends to commit a theft or any felony that he is guilty of burglary. (See, e.g., *People* v. *Goldsworthy* (1900) 130 Cal. 600 [62 P. 1074] [intent to commit arson]; *People* v. *Schwab* (1955) 136 Cal.App.2d 280, 286 [288 P.2d 627] [intent to commit murder or felonious assault]; *People* v. *Denningham* (1947) 82 Cal.App.2d 117, 120 [185 P.2d 614] [intent to commit an act of sex perversion]; *People* v. *Dingle* (1985) 174 Cal.App.3d 21, 30 [219 Cal.Rptr. 707] [intent to commit theft].)

 But where the entry is into a locked vehicle, it is both physically possible and logically probable that the unlawful entry is accomplished with the intent to steal the car itself—which is (even if aborted as it was here) a felony in and of itself, attempted grand theft auto. (§§ 487, subd. (b)(3), 489, subd. (b), 664, subd. (1).) Under the plain language of the statute, therefore, an entry into a locked vehicle with the intent to steal that vehicle is a burglary.

## B.

When a statute is written in plain English and without qualification, we are supposed to interpret it according to the natural import of its language—for the simple reason that, to do otherwise, would be to judicially rewrite the statute. (*Corbett* v. *Chambers* (1895) 109 Cal. 178, 180-181 [41 P. 873]; *People* v. *Barry* (1892) 94 Cal. 481, 482-484 [29 P. 1026]; *People* v. *Salemme* (1992) 2 Cal.App.4th 775, 779 [3 Cal.Rptr.2d 398].) For several reasons, this rule of statutory construction is particularly appropriate in this case.

## 1.

In Illinois, where vehicular burglary is defined as a knowing entry without authority into a "motor vehicle . . . or any part thereof, *with intent to commit therein* a felony or theft" (Ill. Rev. Stat. ch. 38, [¶] 19-1(a) (1981), italics added), the courts have rejected the same argument Teamer makes in this case—that entry into a vehicle with the intent to steal the vehicle itself (as opposed to something "therein") did not constitute a burglary. (*People* v. *Sansone* (1981) 94 Ill.App.3d 271 [49 Ill.Dec. 842, 418 N.E.2d 862, 864]; *People* v. *Mullinex* (1984) 125 Ill.App.3d 87 [80 Ill.Dec. 344, 465 N.E.2d 135, 137-138]; *People* v. *Steppan* (1985) 105 Ill.2d 310 [85 Ill.Dec. 495, 473 N.E.2d 1300, 1303-1304]; *People* v. *Buckner* (1990) 203 Ill.App.3d 525 [149 Ill.Dec. 57, 561 N.E.2d 335, 342] [otherwise, "a person who entered a car to steal something from within would be punished for burglary but a person breaking in to steal the car itself would be guilty of theft only"].)

In Florida, where vehicular burglary is defined as an entry into "a structure or a conveyance with *the intent to commit an offense therein . . . .*" (Fla. Stat. Ann., § 810.02(1), italics added), the courts have also rejected the argument that the statute ought not to apply when the only intent is to steal the vehicle itself. (*State* v. *Dalby* (Fla.Dist.Ct.App. 1978) 361 So.2d 215, 216; *State* v. *Stephens* (Fla. 1992) 601 So.2d 1195, 1196-1197.) The courts of Tennessee and Oklahoma have reached the same result based on the same or substantially similar statutory language. (Tenn. Code Ann., former § 39-905; *Mellons* v. *State* (Tenn.Crim.App. 1977) 560 S.W.2d 634, 635-636; *Morrow* v. *State* (Okla.Crim.App. 1972) 502 P.2d 339).

It appears, a fortiori, that a statute prohibiting the entry into a vehicle with the intent to commit any felony sans a requirement that the felony must be committed "therein" must be similarly construed—that an entry into a vehicle with the intent to steal the vehicle itself is a burglary within the meaning of section 459.

## 2.

It is true, as Teamer points out, that other statutes make it a crime to take an automobile without the owner's consent and with the intent to permanently or temporarily deprive the owner of title or possession. (§ 487, subd. 3 [grand theft auto]; Veh. Code, § 10851 [driving or taking a vehicle]; § 499b [joyriding]; and see *People* v. *Barrick* (1982) 33 Cal.3d 115, 134 [187 Cal.Rptr. 716, 654 P.2d 1243].) So what? Other types of criminal conduct may subject the perpetrator to prosecution on several theories and we cannot find any rule prohibiting prosecution under one statute simply because others also prohibit the same or substantially similar conduct. (*People* v. *Salemme*, *supra*, 2 Cal.App.4th at p. 783 [although the sale of fraudulent securities may be punished under the Corporations Code, the seller may nevertheless be convicted of burglary if he enters the victim's home with the intent to sell the fraudulent securities]; *People* v. *Clark* (1990) 50 Cal.3d 583 [268 Cal.Rptr. 399, 789 P.2d 127] [conviction of arson, murder and attempted murder arising from single act of igniting fire in victim's home]; *People* v. *Thomas* (1991) 231 Cal.App.3d 299 [282 Cal.Rptr. 258] [conviction of possession of cocaine base and transportation of cocaine base arising from single act of carrying contraband in a car]; *People* v. *Brown* (1989) 212 Cal.App.3d 1409 [261 Cal.Rptr. 262] [conviction of assault with a firearm and robbery arising from firing shots while demanding money from victims].)

## 3.

It is also true that a defendant cannot be convicted of first degree felony murder when the underlying felony is the technical burglary resulting from

an entry into a house to commit a felonious assault, an offense necessarily included within the charged murder (*People* v. *Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22])—notwithstanding that section 189 makes every murder committed in the actual or attempted perpetration of a burglary a murder in the first degree. As the Supreme Court recognized in *Wilson*, the felony-murder doctrine, which expresses a highly artificial concept in order to increase the punishment for certain killings, deserves no extension and its application to this sort of "technical" burglary would be beyond any rational function it was designed to serve. (*Ibid.*)

In *Wilson*, the court's statutory contortionism involved section 189, not section 459. Before the decision in *Wilson*, section 189 had been enlarged to include all homicides and killings, not just "murder" as that term is used in the felony-murder statute. (§ 189; *People* v. *Wilson, supra*, 1 Cal.3d at pp. 441-442; *People* v. *Washington* (1965) 62 Cal.2d 777, 780-781 [44 Cal.Rptr. 442, 402 P.2d 130].) In *Wilson*, therefore, the court apparently saw no reason to limit its tinkering with section 189 to an expansion of its coverage and concluded instead that it had an equal right to restrict its application—by holding that an entry with the intent to commit an assault, although a burglary for purposes of section 459, is not a burglary for purposes of the felony-murder rule. (*People* v. *Wilson, supra*, 1 Cal.3d at pp. 441-442.)

Teamer suggests his conviction of vehicular burglary is subject to the same criticism as the felony-murder rule in *Wilson*, on the theory that his nonconsensual entry into the car with the intent to steal the car bootstraps the entry into a burglary which ought to merge into the other charged offense, attempted grand theft auto. While the analogy is facially valid, the underlying rationale is not the same and we therefore will not extend the *Wilson* analysis to this case. We are not faced with a "highly artificial concept" intended to deter one form of conduct (killings) by increasing the punishment for that conduct when it is committed in connection with other crimes. We are dealing with only one form of conduct (auto theft) and the issue of increased punishment supports rather than defeats our conclusion.

A defendant convicted of grand theft auto may be sentenced to county jail for one year or to state prison for a term of sixteen months, two years or three years. (§§ 18, 487, subd. (b)(3), 489, subd. (b).) If he is convicted of attempted grand theft auto (as was Teamer), he may be sentenced to six months in county jail or to state prison for eight months, one year, or eighteen months. (§§ 18, 487, subd. (b)(3), 489, subd. (b), 664, subd. 1.) If he is convicted of second degree (vehicular) burglary (as was Teamer), he may be sentenced to county jail for one year or to state prison for sixteen months, two years (as was Teamer) or three years. (§§ 18, 459, 460, subd.

(b), 461, subd. 2.) In this case, therefore, the theoretical maximum punishment is greater by reason of Teamer's second degree burglary conviction than it would have been if he stood convicted only of attempted grand theft auto. In our view, however, this is not a reason to preclude punishment for the burglary. Consider this: If Teamer broke into the Nissan with the intent to steal its radio, he would unquestionably be guilty of vehicular burglary and its attendant sentencing scheme. We see no logical reason why he ought to receive a lighter sentence because he intended to steal the entire car, not just its radio.

### C.

For all of these reasons, we conclude that section 459 means what it says and that Teamer's burglary conviction is appropriate because it is based upon his nonconsensual entry into the Nissan with the requisite felonious intent—the intent to commit a felony by stealing the Nissan.[4]

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

---

[4]Relying on section 1023, Teamer also contends concepts of double jeopardy preclude his conviction of both vehicular burglary and attempted grand theft auto and that the latter conviction must therefore be vacated. He is mistaken. Section 1023 applies only to a *subsequent* prosecution for an identical or necessarily included offense. (*People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1153 [203 Cal.Rptr. 196]). Presumably because the trial court imposed sentence on the greater offense (midterm of two years on the vehicular burglary) and imposed but stayed a six-month sentence (which we note is one-half, not one-third, the mid-term sentence) on the attempted grand theft auto, Teamer does not raise any issues about the propriety of his sentence. (See § 654.)