THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY L. CLARK, Defendant-Appellant.

Fourth District No. 4—90—0069

Opinion filed January 17, 1991.

Daniel D. Yuhas and Jon McPhee, both of State Appellate Defender's Office, of Springfield, for appellant.

John Turner, State's Attorney, of Lincoln (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by defendant Timothy Clark from his conviction for first-degree murder following a jury trial in the circuit court of Logan County. Defendant was sentenced to serve a term of imprisonment of 60 years.

Defendant was convicted of shooting with a revolver and killing Steven Becicka in rural Logan County on January 15, 1989. The State's theory of the case was that defendant shot the victim to obtain money, apparently to support defendant's cocaine usage. Defendant, on the other hand, attempted to persuade the jury that he was forced to kill Becicka by Parrish Westbrook, who threatened defendant's life. According to defendant, Westbrook demanded the death because defendant and the victim had failed to pay a debt incurred for illicit drugs. The defendant argued he believed he was justified in killing Becicka, although that belief was unreasonable and, as a result, he should be convicted of second-degree murder rather than first-degree murder.

Several issues are raised on appeal. The first issue to be considered is whether the first-degree murder statute is unconstitutional as a violation of due process, equal protection, or separation of powers.

■ Initially, the State contends that defendant has waived this issue by failing to raise it in the trial court. As in *People v. Wade* (1989), 131 Ill. 2d 370, 546 N.E.2d 553, this court need not decide whether a constitutional challenge to a statute which is the basis of a criminal conviction can ever be waived. Even under the plain error doctrine, this court must first determine whether error had in fact occurred. Furthermore, a constitutional challenge to a statute may be raised at any time. *People v. Christy* (1990), 139 Ill. 2d 172, 176.

Defendant's challenges to the constitutionality of the first-degree

murder statute are three. The first of these is that the statute violates defendant's right to due process.

■■ Defendant's challenge based on a due-process argument is this. The law currently defines two types of murder, first degree and second degree. (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 9—2.) According to defendant, because the burden of demonstrating that defendant's conduct falls into second-degree rather than first-degree murder rests upon defendant, the Illinois law creates a rebuttable presumption regarding defendant's state of mind for murder and requires defendant to prove the intent necessary for first-degree murder was not present. Defendant recognizes that under the prior statutory definitions, voluntary manslaughter (the equivalent of the current second-degree murder) was an affirmative defense to murder. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 9—2; *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141.) However, instead of requiring the State to disprove the elements of second-degree murder in order to establish defendant's guilt of first-degree murder, defendant now must prove the existence of the elements of second-degree murder in order to escape a first-degree murder conviction.

This court has recently determined that the current statutory scheme does not violate a defendant's right to due process. (*People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335.) Defendant's argument in this case offers no valid reason for a retreat from the holding in *Buckner*.

■■ ■ Defendant also contends the current statutory scheme violates the equal protection clause of either the United States Constitution or the Illinois Constitution of 1970. The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2) require that no person is to be denied equal protection of the law. However, it is invidious discrimination against a class of individuals, and not simply inequality, which is prohibited by these equal protection clauses. (*Village of Cahokia v. Wright* (1973), 11 Ill. App. 3d 124, 296 N.E.2d 30, *aff'd* (1974), 57 Ill. 2d 166, 311 N.E.2d 153.) There does not appear to be any distinction between the analysis for assessing violations of the equal protection clauses of the United States and Illinois Constitutions. (See *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1.) Recently, the Illinois Supreme Court analyzed the constitutional question of equal protection provided by the Illinois Constitution as follows:

"[A] person or class of persons is denied equal protection by a State statute when the statute arbitrarily discriminates

against that person or class of persons by withholding some benefit or privilege which the State gives to all others. (*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 237; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367.) In this case, neither party has argued that section 4 affects a fundamental right or discriminates against a suspect class. In such circumstances, the discrimination created by the classifications imposed by the statute is arbitrary, and therefore unconstitutional, only if there is no reasonable basis for the classification—*i.e.,* if the classification of one group of persons as those to whom a certain privilege is denied is not rationally related to the statute's legitimate goal. (*Bilyk,* 125 Ill. 2d at 237; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 371; *Chicago National League Ball Club,* 108 Ill. 2d at 367; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120-21.) In other words, if the statute's legitimate goal can, with comparable facility, be achieved without classifying persons, the classifications created by the statute deny some persons equal protection of the laws and render the statute invalid.

\*\*\*

\*\*\* [T]he standard of review is \*\*\*: Are the classifications created by the statute reasonable because these classifications are rationally related to achievement of the statute's legitimate goals in that the particular condition or attribute upon which the classifications are based constitutes a plausible distinction between the classes in view of the statute's legitimate goals? (See *Chicago National League Ball Club,* 108 Ill. 2d at 368; *Illinois Housing Development Authority,* 82 Ill. 2d at 124-25; *Hamilton Corp. v. Alexander* (1972), 53 Ill. 2d 175, 179.) \*\*\*

As additional guidance in ruling on the validity of section 4, we note the presumption that legislative enactments are constitutional (*e.g., Bernier v. Burris* (1986), 113 Ill. 2d 219, 227); to the same purpose, statutory classifications created by the legislature 'are presumed to be valid' (*Bilyk,* 125 Ill. 2d at 236; see *Illinois Housing Development Authority,* 82 Ill. 2d at 122). As a result, it is for the party challenging a statute's constitutionality—here, plaintiffs—to rebut these presumptions and prove the unconstitutional nature of the statute. *Bilyk,* 125 Ill. 2d at 235; *People v. Walker* (1988), 119 Ill. 2d 465; *Bernier,* 113 Ill. 2d at 227." *County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 335-38.

The State argues defendant has failed to identify the class

of which he is a member and which is subject to the discrimination. However, the State also argues that first-degree murder defendants are not singled out for a burden unlike those faced by other defendants, apparently assuming that defendant meant to define as a class all persons charged with first-degree murder. Other defendants are required to raise affirmative defenses such as intoxication, justifiable use of force, entrapment, compulsion, or necessity. (Ill. Rev. Stat. 1987, ch. 38, pars. 6—4, 6—3, 7—14, 7—1 through 7—10, 7—12, 7—11, 7—13.) The State also points out the procedural similarities between the case at bar and cases involving an insanity defense. Section 6—2(e) of the Criminal Code of 1961 (Code) provides:

> "(e) When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged, and, in a jury trial where the insanity defense has been presented, the jury must be instructed that it may not consider whether the defendant has met his burden of proving that he is not guilty by reason of insanity until and unless it has first determined that the State has proven the defendant guilty beyond a reasonable doubt of the offense with which he is charged." (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(e).)

The second-degree murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) sets forth the following definitions and procedure:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9—1 of this Code and either of the following mitigating factors are present:
>
> (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or
>
> (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [justifiable use of force], but his belief is unreasonable.
>
> (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
>
> (c) When a defendant is on trial for first degree murder and

evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented, the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code. In a jury trial for first degree murder in which evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented and the defendant has requested that the jury be given the option of finding the defendant guilty of second degree murder, the jury must be instructed that it may not consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." (Ill. Rev. Stat. 1987, ch. 38, pars. 9—2(a), (b), (c).)

The elements of first-degree murder are as follows:

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than second degree murder." Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).

■■ ■ The defendant's argument is that he has a fundamental right to fair treatment in the criminal process. (See *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11.) The defendant concedes the State has a compelling interest in the fair, reliable, and efficient "regulation" of criminal activity. Defendant feels the procedure employed by the statutes in question creates an unnecessarily restrictive impact on defendants charged with first-degree murder. Defendant suggests the law be changed to require the State to negate the mitigating factors raised by a defendant claiming to have committed second-degree murder rather than first-degree murder.

When being subjected to the traditional equal protection tests, statutes carry a presumption of rationality and it is the defendant's burden to demonstrate the impermissible nature of the classification created. (*Kaeding*, 98 Ill. 2d 237, 456 N.E.2d 11.) As in *Kaeding*, the instant case does not involve a statute directed at a suspect class. Nor do the statutes involved threaten a fundamental constitutional right, as further analysis will show. See *Kaeding*, 98 Ill. 2d 237, 456 N.E.2d 11.

According to defendant, he should not be required to prove second-degree murder to escape a presumption of guilt of first-degree murder. Furthermore, defendant contends defendants should be allowed to plead guilty to second-degree murder under appropriate circumstances.

A fair reading of the statute in question leads to the clear conclusion there is no presumption of guilt of first-degree murder which must be rebutted by defendant. Contrary to defendant's assertions, a defendant could plead guilty to second-degree murder. Furthermore, the State could charge defendant with second-degree murder. (*People v. Burks* (1989), 189 Ill. App. 3d 782, 545 N.E.2d 782.) The elements of first-degree murder under the current statute are identical to the offense of murder under the prior statute. (Compare Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a), with Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).) The mitigating factors of second-degree murder are identical to the factors which would have reduced murder to voluntary manslaughter under the prior law. (Compare Ill. Rev. Stat. 1989, ch. 38, par. 9—2, with Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) With regard to the prior law, the decision in *Reddick* had this to say:

> "Thus, under the 1961 Code, if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge of murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless, and must also prove beyond a reasonable doubt the statutory elements of murder." (*Reddick*, 123 Ill. 2d at 197, 526 N.E.2d at 146.)

In *First and Second Degree Murder in Illinois*, after acknowledging the second-degree murder statute was written with the intention of retaining all substantive statutory and case law pertaining to voluntary manslaughter, the author notes the fundamental difference is that under the current statute a defendant can only be found guilty if the State first proves guilt of first-degree murder beyond a reasonable doubt and the defendant proves by a preponderance of the evidence one of the two mitigating factors. Steigmann, *First and Second*

*Degree Murder in Illinois*, 75 Ill. B.J. 494 (1987).

Therefore, while there may be some difference between the prior law and the existing statutory scheme, the differences which defendant purports to rely on in seeking to have the statute declared unconstitutional do not exist. Defendant does not deny that it is within the legislature's province to define criminal offenses. See *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.

██ █ Nor is the defendant's separation-of-powers argument persuasive. Defendant argues the State's Attorney's office is part of the executive branch of government and the legislature violated section 1 of article II of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, §1) by removing the State's Attorney's discretion in charging defendants under this statute. According to defendant, the statutes impliedly mandate that defendants be charged with first-degree murder. As previously stated, the State's Attorney has the discretion of charging a defendant with second-degree murder. (*Burks*, 189 Ill. App. 3d 782, 545 N.E.2d 782.) The conclusions in *Burks* appear appropriate. First, it would seem to be an impermissible exercise of prosecutorial discretion for a prosecutor to charge a defendant with a crime the prosecutor knows the defendant did not commit. Second, a prosecutor may charge a defendant with second-degree murder, thereby conceding the presence of one of the mitigating factors, so that if a defendant is charged with second-degree murder and the State has proved defendant guilty of first-degree murder, the trier of fact could only find defendant guilty of second-degree murder and the defendant bears no burden of proceeding in this regard. The procedure outlined in section 9—2(c) of the Code only refers to the circumstances where the State charges first-degree murder and the defendant wants to reduce it to second-degree murder. Therefore, defendant's constitutional challenges are without merit.

██ █ The second issue this court is asked to consider is whether defendant was provided ineffective assistance of counsel where evidence of compulsion was presented as a defense and no jury instruction on involuntary manslaughter was tendered. The standards for evaluating ineffective assistance of counsel are set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. In order to establish ineffective assistance of counsel so as to require reversal of a conviction, the defendant must demonstrate counsel's performance was so deficient that the defense attorney was not functioning as "counsel" as guaranteed by the sixth amendment of the United States Constitution. Defendant must show the deficient per-

formance of counsel prejudiced the defense, deprived defendant of a fair trial, fell below an objective standard of reasonableness, and that the result would probably have been different had counsel not provided ineffective assistance. Allegations arising from matters of judgment or trial strategy will not support a claim of ineffective assistance of counsel. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Spicer* (1987), 158 Ill. App. 3d 699, 511 N.E.2d 235.) The decision to rely on one theory of defense to the exclusion of other theories of defense is a matter of trial strategy. (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.) The decision to tender an instruction regarding an included offense is also a question of trial strategy which cannot form the basis for a finding of ineffective assistance of counsel even though other counsel might have proceeded differently. See *People v. LePretre* (1990), 196 Ill. App. 3d 111, 552 N.E.2d 1319.

■■ For these reasons, defendant's contention that he was provided ineffective assistance of counsel because defense counsel failed to tender an involuntary manslaughter instruction must be rejected. Furthermore, there is no evidence which would warrant the giving of the instruction. Defendant pointed a revolver at Becicka and pulled the trigger. Defendant testified he did not intend to harm Becicka and he fired the shot using his left hand even though he is a predominantly right-handed person, without aiming. Defendant's brief seems to indicate he did have his eyes closed, but the record could be read to indicate he closed his eyes after he fired the shot. Defendant suggests this manner of executing the victim renders the act one of recklessness. While we need not decide this, relying instead on the trial strategy reasoning, this court would be extremely reluctant to decide these facts support the giving of the involuntary manslaughter instruction.

Defendant's second allegation of ineffective assistance of counsel is that defense counsel should not have presented a defense of compulsion since compulsion is no defense to first-degree murder. Defendant contends, therefore, that in so doing defense counsel effectively pleaded defendant guilty to first-degree murder.

■■ The *Strickland* test may be set aside only when counsel entirely fails to subject the prosecutor's case to a meaningful adversarial testing. (*People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118; *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513; *People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072.) As the State notes, this is not such a case. In this case, defense counsel did not concede defendant's guilt, but instead attempted to persuade the jury that defendant thought he was justified in acting as he did, although

his belief was unreasonable. The fact compulsion does not constitute a legal defense to murder (*People v. Gleckler* (1980), 82 Ill. 2d 145, 411 N.E.2d 849) does not render counsel's representation of defendant ineffective. The jury was not instructed regarding compulsion. The jury was, however, given an instruction concerning second-degree murder, which included a reference to acting with the unreasonable belief that circumstances justifying the use of deadly force existed. The State points out that the jury was never told that coercion or compulsion did not mitigate or reduce the offense of first-degree murder, and instead of referring to the legal inadequacy of the defendant's theory at trial, the prosecutor's argument focused on the unbelievability of defendant's claim of compulsion.

It would seem defense counsel's approach to this case was to convince the jury the defendant believed he was justified in using deadly force because of the compulsion even though that belief was unreasonable. Under the circumstances of this case, regardless of the legal viability of the defendant's position—which this court need not determine in order to dispose of this appeal—the jury could have found defendant guilty of second-degree murder instead of first-degree murder had it believed defendant's version of the incident. As a result, there was no ineffective assistance of counsel.

The third issue is whether the trial court erred by refusing to give defendant's tendered instruction pertaining to accomplice testimony. Defendant characterizes the tendered instruction as a modification of Illinois Pattern Jury Instruction 3.17 (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) (hereinafter IPI Criminal 2d)). IPI Criminal 2d No. 3.17 states:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal 2d No. 3.17, at 24.)

The instruction, as tendered, referred to a witness who may have been involved in the commission of a crime rather than one who admitted to being involved.

In *People v. Hunt* (1981), 99 Ill. App. 3d 958, 426 N.E.2d 568, an instruction similar to that tendered by defendant in this case was rejected. The court in *Hunt* found no justification for telling a jury to view the testimony of a one-time suspect who had never been charged with an offense with the same suspicion, caution and circumspection given the testimony of an admitted criminal accomplice.

The case at bar creates a somewhat closer question. The witness

in question is Parrish Westbrook, whom the defendant attempted to implicate as being the person who compelled defendant to shoot the victim.

Westbrook was charged by information with the first-degree murder of Becicka. Following a preliminary hearing, the court found probable cause to hold Westbrook for trial on the charge. At defendant's trial, Westbrook informed the court that his attorney had advised him not to give any testimony at defendant's trial. After the defense began its case, Westbrook waived his fifth amendment privilege. The State dismissed the charge of murder against Westbrook, but no grant of immunity was offered.

Westbrook testified he and defendant became friends while the two were incarcerated in the McLean County jail. Westbrook denied he had any gang affiliations or ever sold or attempted to sell drugs to defendant. Westbrook denied knowing Becicka or ever having sold him drugs. He stated he was in Memphis, Tennessee, on the day of Becicka's death.

Defendant testified he knew Westbrook to be affiliated with the Black Gangster Disciples street gang. According to defendant, he and Becicka owed Westbrook money for drugs and, on January 15, 1989, Westbrook ordered defendant, at gunpoint, to shoot Becicka.

Detective Sergeant Terry Sabo of the Logan County sheriff's office testified the focus of his investigation was to check out defendant's story as completely as possible to confirm Westbrook's involvement. Other than defendant's own statements, no evidence of involvement by Westbrook ·was found. In addition, defendant gave several varying versions of the incident to the police before implicating Westbrook. Defendant even admitted he lied by implicating other persons who were not involved.

Defendant would have this court decide that, because Westbrook was charged with the offense, defendant is entitled to a modified version of the accomplice-witness instruction. However, that is not the law. The charges may result from mistaken identity, and merely having been charged does not render the witness an accomplice.

In *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31, the Illinois Supreme Court, relying on its prior decisions in *People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772, *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313, and *People v. Hrdlicka* (1981), 344 Ill. 211, 176 N.E.308, ruled that the trial court erred by refusing to give the tendered accomplice instruction. The court noted that the test to determine the propriety of giving the instruction is whether there exists probable cause to believe the witness was guilty either as a principal

or on an accountability theory. The court also noted that merely because the witness testified she was not "fully aware" the defendants committed the crime until the following day does not support the refusal of the trial court to give the instruction when there is sufficient evidence in the record to justify her indictment as a principal or on an accountability theory.

Similarly, in *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552, this court held the failure to give the instruction was reversible error. In *Barker*, defendant's wife was a principal prosecution witness.

> "She had originally been charged with the same crimes as the defendant but her charges had been dismissed in exchange for her testimony against her husband. Mrs. Barker testified that she had married the defendant on November 4, 1978, and that they had resided in an apartment located near the Salvation Army store. She recalled that approximately three or four weeks after being married, she had looked out the window and had seen her husband behind the Salvation Army store standing on top of garbage cans. Shortly after this she heard a 'ticking' sound. That same evening the defendant brought to the apartment the brown vinyl rug previously identified by Burnett. She also received several items of clothing from the defendant. Mrs. Barker testified that approximately a week later she returned these clothes to the store." (*Barker*, 78 Ill. App. 3d at 687, 397 N.E.2d at 554.)

After recognizing that an accomplice is a person who could be indicted as a principal or an accessory, this court concluded that even though there was no basis on the evidence presented at trial to determine defendant's wife to be an accomplice, the instruction should nevertheless have been given based on the facts (1) she was charged as a codefendant, (2) at a preliminary hearing probable cause to charge her was found to exist, and (3) the charges were dropped in return for her testimony.

 ██ These cases relied on by defendant can be distinguished on several grounds. First, in spite of this court's statement to the contrary in *Barker*, in both *Cobb* and *Barker* it is clear the facts testified to by the witness herself could support a charge on an accountability theory, if not as a principal. Under the current law, accountability exists when:

> "(a) Having a mental state described by the statute defining the offense, [a person] causes another to perform the conduct, and the other person in fact or by reason of legal incapacity

lacks such a mental state; or

> (b) The statute defining the offense makes him so accountable; or

> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable, unless the statute defining the offense provides otherwise, if:

> (1) He is a victim of the offense committed; or

> (2) The offense is so defined that his conduct was inevitably incident to its commission; or

> (3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense.''

> (Ill. Rev. Stat. 1989, ch. 38, par. 5—2.)

It seems at least arguable that the witness in *Barker* could have been charged with participating in the crime and the requisite mental state could be inferred from her failure to thwart the crime earlier than she did. Unless there was additional evidence not disclosed in the opinion, it is obvious defendant's wife was given the benefit of the doubt. In the case at bar, the witness never testified he was in any way involved in the offense. And, except for defendant's assertions, there was no other evidence of Westbrook's involvement. Because of the circumstances, defendant's assertions could be considered unreliable, not only because defendant is on trial for the crime, but also because of the numerous inconsistent versions of the incident he related to the police. At the time of this trial, there does not appear to have been sufficient probable cause to uphold a charge against Westbrook.

Second, in both *Cobb* and *Barker* the witness testified so as to inculpate the defendants. In this case, however, the witness' testimony rebuts the anticipated defense of compulsion and in no way inculpates defendant. Westbrook is merely testifying to his noninvolvement.

Third, in neither *Cobb* nor *Barker* did the court consider a modified IPI instruction which misstated the law, as in the case at bar. The giving of a nonpattern jury instruction is a matter resting in the discretion of the trial court. (*People v. Hanson* (1985), 138 Ill. App. 3d 530, 485 N.E.2d 1144.) The refusal to give the tendered instruction was not an abuse of discretion.

The final issue is whether defendant's sentence was excessive. Defendant was sentenced to a term of imprisonment of 60 years. First-degree murder is an offense for which the convicted offender cannot be given probation. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(2)(A).) The sentence authorized for first-degree murder is set forth in section 5—8—1(a)(1) of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) That section provides as follows:

> "(1) for first degree murder, (a) a term shall be not less than 20 years and not more than 60 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment, or (c) if the defendant has previously been convicted of first degree murder under any state or federal law or is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).

Defendant argues the trial court failed to properly consider the defendant's prospects for rehabilitation. Defendant was 26 years old at the time of sentencing. At the sentencing hearing, defendant expressed remorse for what had happened to Becicka and the pain it had caused Becicka's family. He stated that while in prison he planned to further his education with the aim of someday being beneficial to society in some way. Defendant acknowledged he had a substance-abuse problem and indicated his attempts to overcome it. Both he and Becicka had smoked marijuana the day of Becicka's death.

Twelve letters were presented to the trial judge on behalf of defendant. All of the letters attested to defendant's good character and connection to the community, many expressing surprise that defendant was involved in a crime of violence. Daniel Scott Hoerner, a long-time friend of defendant's, testified he did not feel defendant could have murdered another human being.

However, the defendant's potential for rehabilitation is not the only factor to be considered by the trial court. The Illinois Constitution requires that criminal penalties be determined both according to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship. (Ill. Const. 1970, art. I, §11.) In making such a determination, the trial court is to consider the statutory factors in aggravation and mitigation. Ill. Rev. Stat. 1989, ch. 38,

pars. 1005—5—3.2, 1005—5—3.1.

In sentencing the defendant, the trial judge stated he was considering the evidence presented at trial, the presentence report, the letters written in defendant's behalf except insofar as they related an opinion on the facts of this case, the evidence presented at the sentencing hearing, and the arguments of counsel regarding sentencing alternatives. The judge noted the defendant had a significant history of criminal activity considering his age, and had killed a person who had been a friend for a number of years. The trial court found that the sentence was necessary to deter others from committing the same crime, defendant's criminal conduct was not unlikely to recur, and defendant's character and attitude indicated he was likely to commit another offense. The court noted the absence of the mitigating factor that the defendant did not contemplate that his conduct would cause or threaten serious physical harm. While rejecting the prosecutor's request for a natural-life sentence, the trial court nevertheless imposed the 60-year term, finding that a lesser term would deprecate the seriousness of the defendant's conduct and be inconsistent with the ends of justice.

The defendant subsequently filed a motion to reduce or reconsider the sentence imposed alleging, among other things, that the trial court had failed to consider his rehabilitative potential and to sufficiently consider his "demeanor, credibility, intelligence, moral character, social environment, background, education, and age." In denying this motion, the trial judge again stated he had considered the evidence at trial, the presentence report, the sentencing alternatives, and "other matters." The judge rejected the claim that he had not considered the defendant's demeanor and credibility. The judge expressly stated he had considered the defendant's rehabilitative prospects and concluded that based on the totality of the circumstances he continued to feel that the 60-year term was the appropriate sentence.

With regard to adult convictions and probation history, the defendant's presentence report had this summary:

"Adult Convictions:

| DATE | OFFENSE | DISPOSITION |
|---|---|---|
| 11—17—86 | Reckless Driving McLean County, Illinois, 85—15549 | 12 months Court Supervision $300.00 Fine, Court Costs |

| | | |
|---|---|---|
| 07—09—87 | Illegal Possession of Alcohol by Consumption McLean County, Illinois 87—OV—73 | $100.00 Fine, Court Costs |
| 03—06—89 | Burglary McLean County, Illinois 88—CF—414 | 48 months Probation, 178 days in Jail, Restitution in amount of $3,293.48, Court Costs |

*The defendant also has four other traffic convictions since 1988, all resulting in Fine and Court Costs.

Prior Probation History:

The defendant was sentenced to one year Court Supervision on November 17, 1986 in McLean County, Illinois for the offense of Reckless Driving. On October 7, 1988 a Rule to Show Cause was filed in McLean County, Illinois for the defendant's failure to pay fine and costs. This case of supervision is still active due to the non-payment of the fine and costs.

The defendant was sentenced to a term of 48 months Probation on March 6, 1989 in McLean County, Illinois, for the offense of Burglary. The defendant does not have a probation history on this case. The defendant has been in custody in Logan County, Illinois since January 20, 1989 on the instant offense."

 Unless it represents a clear abuse of the trial court's sentencing discretion, a sentence will not be reversed on appeal. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) There is a presumption that in imposing sentence the trial court considered the mitigating evidence offered. This presumption may be overcome if there is some statement in the record, other than the imposition of the sentence, which indicates the trial court failed to consider such evidence. While such evidence must be considered, the trial court need not believe it if there is other evidence to refute the evidence offered in mitigation. (*People v. Bradney* (1988), 170 Ill. App. 3d 839, 525 N.E.2d 112.) Furthermore, defendant's rehabilitative potential and the goal of restoring defendant to useful citizenship need not be accorded more weight than the seriousness of the offense and other relevant factors. (*People v. Compton* (1990), 193 Ill. App. 3d 896, 550 N.E.2d 640.) The primary responsibility for striking the proper balance between rehabilita-

tive potential and the seriousness of the offense lies with the trial court. (*People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1.) Moreover, a reviewing court will not disturb the sentence imposed merely because the members of the reviewing court might have imposed a different sentence. (*People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307.) As a result, it cannot be said that the sentence imposed was the result of an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Logan County is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.