THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD LYONS, Defendant-Appellant.

First District (6th Division)   No. 1—88—2791

Opinion filed May 10, 1991.

Randolph N. Stone, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kevin Sweeney, and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

After a jury convicted the defendant of first degree murder, he was sentenced to 26 years' imprisonment. He contends that the second degree murder statute is unconstitutional and that he was denied effective assistance of counsel.

Luther Washington testified that on July 12, 1987, he had engaged in a fist fight with the defendant. During the course of the fight, another individual had hit the defendant with a stick. During the late morning of the following day, Washington was driving down Gladys Street in Chicago. He and his passenger, Jimmy McCrary, stopped to talk to Derrick and William Friday. As they were talking, Washington observed the defendant walking down the street toward Washington's car. The defendant had a gun in his hand. As he approached the car, the defendant fired a shot. Washington backed his car up for a short distance but was unable to proceed any farther because of the traffic behind him. Washington then ducked down in the car and drove forward. He heard three or four additional shots. His passenger, McCrary, turned completely around to face the rear of the car and attempted to crouch behind the car door. The defendant fired another shot as Washington drove by. McCrary exclaimed that he had been shot.

Washington testified that although he had a .25 caliber weapon under the seat of his car, he never touched the weapon at any time. Immediately following the shooting, he drove to the emergency room of Bethany Hospital and placed McCrary's body into a wheelchair. He left his car parked on the street and called the hospital and the police. He told the police that the defendant, whom he had known for 20 years, had shot McCrary.

By stipulation it was established that McCrary's death was caused by a gunshot wound to the left back which penetrated the posterior left ventricle of his heart.

Dorothy Freeman testified that on the day of the shooting she lived on West Gladys. She was speaking on the telephone when she heard a gunshot. She ran to the front door and observed the

defendant walking down the street toward a car driven by Luther Washington. The defendant had a long-barrelled handgun which he fired at the car. The passenger in the car was slumped in the seat. She did not see anyone in the car display a weapon.

Altee Ferguson Pettus testified that on the day of the shooting she was at home watching television. She heard a shot and went to the front door. She saw the defendant walking eastbound on Gladys, holding a revolver. As the car driven by Washington backed up, the defendant fired the revolver. The car proceeded to move slowly forward. As it did so, the defendant stood in front of the car and fired again.

Georgia Caldwell testified that she ran out the door after hearing a shot and observed a man whom she was unable to identify walking down the street. The man was shooting at a car driven by Luther Washington, whom she knew from the neighborhood. The only person she saw with a gun was the person who walked down the middle of the street.

Officer Faith Lambert testified that she observed bullet holes in Luther Washington's car, which was parked approximately ·50 feet from the door of the emergency room of Bethany Hospital. The front passenger side window had been shot out and there were pieces of glass in the car.

The defendant, who was 33 years old, testified that he was a long-time heroin user. He had previously purchased drugs from Luther Washington, whom he had known for years. On the day before the shooting, Washington and his friends beat the defendant because he had been criticizing the quality of the drugs which Washington was selling. The day following the beating, the defendant returned to the area to purchase drugs from another supplier. He had armed himself with a pistol that he had obtained from a friend. As he was walking east on Gladys he saw Washington's car and someone standing next to it. As he crossed the street he heard two shots come from the driver's side of Washington's car. The defendant believed that the shots were directed at him. He began to back up across the street and then fired at Washington's car. As the car came past him, he again fired at the car because he believed that Washington was going to shoot at him. He did not see a passenger in the car.

The defendant first argues that the second degree murder statute (Ill. Rev. Stat. 1989, ch. 38, par. 9—2) is contrary to the Illinois and United States constitutions because it allegedly violates the

equal protection, due process and separation of powers provisions of those constitutions.

■■ The defendant's claim of unconstitutionality on the basis of the due process, equal protection and separation of powers provisions of the Federal and Illinois constitutions has been decided contrary to the defendant's position in two recent cases, *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373, and *People v. Gore* (1991), 212 Ill. App. 3d 984. The arguments made by the defendant here have been more than adequately discussed in those cases, and we need not repeat them. The defendant's claim of unconstitutionality is rejected.

During a conference on jury instructions the defense attorney said that he wanted the jury to be instructed as to second degree murder but not with the Illinois Pattern Jury Instruction. (Illinois Pattern Jury Instructions, Criminal No. 7.06A (2d ed. Supp. 1989).) He objected to that instruction on the ground that it allegedly shifted the burden of proof to the defendant. Over the objection of the defense attorney, the judge insisted that he be permitted to talk to the defendant. The judge pointed out that the defendant "is going to be the one to actually make the final decision. And he is the one that is going to complain in a P.C. if this instruction is not given." He told the defendant what the sentences could be if the defendant were found guilty of second degree murder. The judge said that he thought second degree murder was an appropriate instruction in the case and that he "would be willing to give it." The following then occurred:

"THE COURT: You will not be able to say later on, Judge, [the defense attorney] goofed up on this case. He should have asked for a second degree murder instruction. You would also not be able to say, Judge, you goofed up in this case, you should have given a second degree murder instruction in this case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want to go for it, all or nothing?

THE DEFENDANT: All or nothing.

THE COURT: That's what you want to do here?

THE DEFENDANT: Yes, sir.

DEFENSE ATTORNEY: Your honor, I would like the record to reflect that Mr. Lyons discussed his decision several days with me. I told him and I think his decision is based upon my advice.

He can correct me if I am wrong. But I advised him that if the burden of proof had not been changed and if you were not intending to enforce the laws as presently written, I would definitely request second degree murder, just as I would have requested the voluntary manslaughter instruction under the old law where the burden stays with the state.

But for the reasons stated in my memorandum of law in which I explained extensively to my client, I do not believe that the State's burden of proof on first degree murder can be segregated there and not shifted to the defendant where the existence of belief is common to both charges.

And I told them that that's the only reason that I am advising that we go for all or nothing. And I explained the possible sentences to him. I think this is a horrible type of decision to make.

As a lawyer I am appalled by the current law, but I have fully explained it to Mr. Lyons because he is the person who is placed—."

The defendant adhered to his decision and refused to request the second degree murder instruction.

■ The defendant now maintains that his attorney did not render effective assistance because he did not agree to the Illinois Pattern Jury Instruction. The colloquy between the judge, the defendant and the defendant's attorney shows a clear example of a tactical decision made by the defense attorney with the eyes-open acquiescence of his client. The judge did everything he possibly could to advise the defendant. In our judgment, the defendant has waived any right to claim ineffective assistance of counsel.

The defendant concedes that his attorney "effectively presented his case, diligently investigated and interviewed witnesses and vigorously cross-examined the prosecution witnesses." His alleged incompetence is his failure to be so prescient that he could foretell that reviewing courts would uphold the constitutionality of the second degree murder statute. That is not incompetence. Moreover, we do not believe that the defendant's claim meets the requirements of *People v. Eddmonds* (1984), 101 Ill. 2d 44, 461 N.E.2d 347, which held that the inadequacy of a defendant's trial counsel entitles him to a new trial if his counsel was actually incompetent and if the incompetence resulted in substantial prejudice to the defendant without which the result of his trial would probably have been different. Applying that principle to this case, we find that the defendant has failed to establish ineffective assistance of counsel. (*Cf. People v.*

*Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373.) In our judgment there is little or no likelihood that the result would have been different if the second degree murder instruction had been given.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.