THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL GUIDRY, Defendant-Appellant.

First District (1st Division)   No. 1—89—2675

Opinion filed September 23, 1991.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Loren H. Seidner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, Carl Guidry, was charged by information with two counts of first-degree murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).) Following a bench trial, defendant was convicted initially of first-degree murder. However, after hearing arguments on post-trial motions, the trial court vacated its finding of guilty of first-degree murder, entered a finding of guilty of second-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)) and sentenced defendant to a term of 15 years' imprisonment in the Illinois Department of Corrections.

On appeal, defendant contends that the evidence adduced against him at trial was insufficient to prove him guilty beyond a reasonable doubt of second-degree murder. He also contends that the current Illinois homicide statute, which sets forth the elements for first- and second-degree murder, and in particular, the second-degree murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—2), is unconstitutional on the grounds that it violates Federal and State due process rights, equal protection rights, and the separation of powers doctrine.

At trial, the State's case in chief consisted primarily of the testimony of Bach Moore (Moore), girl friend of the decedent, Keith Nash (Nash). She testified that on October 15, 1987, at about 7 p.m., she and Nash, both of whom had just completed their work shift at the Hawthorne Race Track, were walking down the racetrack which led to Cicero Avenue. Nash left Moore for a few minutes, at which time the defendant approached her, called her a "bitch" and inquired why Nash had taken his bicycle. When she responded that she did not know anything about a bicycle, defendant left. Moore proceeded until she reached a gas station located on Cicero Avenue where she again saw Nash. At this time, Nash had a bicycle but he was unable to ride it because something was wrong with one of the pedals. As the two continued on foot, Moore told Nash about her encounter with defendant.

Soon thereafter, Moore saw a brown Ford automobile approaching them. Three men got out of the vehicle: the defendant, Lionel Walker (Walker) and Floyd Rose (Rose). As the defendant walked toward Moore and Nash, Moore noticed defendant had an object with a silver tip in his right hand so she told Nash to "[r]un, he has a knife." Defendant then asked Nash "why are you taking my bike[?]"; however, without waiting for a response, defendant swung up his right

hand striking Nash in the upper part of his chest. After Nash fell to the ground, defendant, while still holding an object in his right hand, said "that's how dogs die" and then left with the other two men. Moore also testified that she never saw a knife or anything else in Nash's hands except the bicycle.

Anthony Versetto, a security guard at the racetrack, testified that on the evening in question, defendant and Rose came up to him while he was walking with Walker around 7 p.m. and defendant said something about his bike being taken and asked Walker to go with him. Defendant and Rose left for a few minutes, and when they returned, defendant, who was carrying half of a pool stick, stated that he was going to get the guy who took his bike. Versetto testified that a short while later he saw Rose return through the back gate of the track with defendant's bike. He further stated that he had seen 15 to 20 other employees using that bike.

Because Walker and Rose were unavailable to be witnesses at the trial, the parties stipulated to their testimony that was previously given during the preliminary hearing. Walker had testified that he drove defendant and Rose to Cicero Avenue to retrieve defendant's bike. Defendant saw Nash with his bike, exited the car and told Nash to return the bike. When Nash flipped the bike to defendant, defendant punched him in the chest. As Walker drove off, he saw Nash on the ground through his rear view car mirror; however, he had not seen a struggle or fight between defendant and Nash. Walker also previously testified that about 30 minutes later, while back in his room at the track, defendant returned and stated that he thought he had stabbed Nash.

Rose had previously testified that he was accompanying defendant on October 15 when they met up with Walker. The three men, while traveling in Walker's car in search of Nash and defendant's bike, found Nash on Cicero Avenue, and defendant got out of the car. When Rose exited the car, he proceeded to the gas station where he saw defendant. Defendant told Rose to take the bike back to the racetrack and said that he had cut Nash.

Following a stipulation of the medical examiner's findings that Nash had died of a stab wound to the chest, defendant testified on his own behalf. Defendant testified that on October 15, 1987, he was working two jobs at the racetrack; in the morning he exercised the horses and in the evenings he fed them. To aid in his jobs, defendant had a bicycle to travel from one barn to the other, a pool cue for prodding the horses, and a small knife that he kept in his belt to cut the wrapping off the bales of hay. Defendant stated that several em-

ployees used the bike in performing their job duties as well. That evening, at about 6 p.m., defendant parked the bike outside a barn and went inside to feed the horses. When he came back outside, the bike was gone so he inquired about it. Someone told defendant that a man and a girl were walking down the road with his bike. Defendant then ran after Nash and Moore, hollering for them to return his bike; however, Nash broke away. Defendant approached Moore and inquired about the guy with the bike, but Moore responded that she didn't know what defendant was talking about.

Later, defendant, Walker and Rose got into Walker's car and located Nash and Moore. Defendant testified that he asked Nash for the bike but Nash refused and pulled a knife with a five-inch blade out of his pocket. Defendant then tried to grab the knife and take the bike from Nash, and as the two men struggled and scuffled for the knife, Nash was stabbed and fell to the ground. Defendant picked up his bike, brought it to the gas station and gave it to Rose. Defendant admitted that he carried a knife on October 15, but denied ever removing it from his belt, and he also admitted that he told Rose and Walker that Nash was stabbed.

The parties presented the stipulation of Officer Foley, who, if called to testify, would state that immediately after the incident Rose told the officer a brief struggle ensued between defendant and Nash. Additionally, Ms. Klemener, a law clerk at the public defender's office, would testify that during an interview, Moore stated that she did not see defendant with the knife until after the incident.

Defendant first contends on appeal that his conviction for second-degree murder should be reversed because the evidence against him is so improbable as to raise a reasonable doubt of guilt. Specifically, he asserts that Moore was a biased witness; that Moore's testimony was impeached on two crucial facts, to wit: seeing defendant with a knife prior to the incident and hearing defendant exclaim "that's how dogs die" after the incident, considering that such statement was not included in Officer Foley's written report; that the evidence was contradictory concerning whether Nash's death was preceded by a struggle between the men; and that since defendant's testimony that Nash had the knife and was the aggressor was uncontradicted, it could not be disbelieved by the trier of fact.

■ We believe that a rational trier of fact could have found that Moore's testimony was candid and credible and that her testimony and the other evidence presented at trial support the trial court's finding of guilt. When presented with an appeal based upon a lack of sufficient evidence, the relevant question before the reviewing court is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453 (adopting the standard enunciated in *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781).) The evidence must be so unsatisfactory that it creates a reasonable doubt in order to set aside a criminal conviction. *People v. Hooper* (1989), 133 Ill. 2d 469, 497, 552 N.E.2d 684.

It is well established that the testimony of a sole witness, if positive and credible, is sufficient to sustain a conviction (see *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182; see also *People v. Velez* (1984), 123 Ill. App. 3d 210, 462 N.E.2d 746), and the resolution of the credibility of a witness is within the exclusive province of the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Moreover, it is not the duty of a reviewing court to substitute its judgement as to the credibility of witnesses or the weight of the evidence for that of the trier of fact. *Novotny*, 41 Ill. 2d 401, 244 N.E.2d 182.

In the present case, the evidence shows that defendant admitted to stabbing Nash. The testimony of Moore was corroborated by the stipulated testimony of both Walker that he saw defendant punch Nash in the chest and Rose that he saw defendant return to the gas station with the bike and heard him state "he had cut the boy." With respect to the events leading up to the confrontation between Nash and defendant and the ultimate stabbing of Nash, the testimony of Moore and defendant is almost identical.

Defendant claims that Moore's testimony was impeached with regard to his purported statement "that's how dogs die," since it was discovered that such statement was not included in Foley's police report. Yet, there is nothing in the record to suggest Moore did not tell Foley about the comment or that the report contained a verbatim account of Moore's statement. Accordingly, we affirm the trial court's conviction of defendant for second-degree murder.

In response to defendant's arguments concerning the constitutionality of the Illinois homicide statute, the State initially asserts that defendant has no standing to raise any of the constitutional issues in this case since he was not adversely affected by any of the rules of law he is attempting to challenge on appeal. The State supports its argument with *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908, and *People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081, contending that these cases stand for the proposition that "in the absence of facts demonstrating an unconstitu-

tional application of the statute in this case the defendant may not challenge the statute on the grounds that it might conceivably be applied unconstitutionally in some hypothetical case." *Wisslead*, 108 Ill. 2d at 397; *Broadrick*, 413 U.S. at 610, 37 L. Ed. 2d at 839, 93 S. Ct. at 2915.

Moreover, "[a] party may question the constitutional validity of a statutory provision only if he or she has sustained or is in immediate danger of sustaining some direct injury as a result of the enforcement of the statute." (*People v. Esposito* (1988), 121 Ill. 2d 491, 512, 521 N.E.2d 873; see also *People v. Ziltz* (1983), 98 Ill. 2d 38, 455 N.E.2d 70.) Neither may a party assert a violation of the constitutional rights of anybody, save his own rights. *People v. Rogers* (1989), 133 Ill. 2d 1, 549 N.E.2d 226.

■ While we find the State's contention with respect to the issue of standing to be persuasive as it is presented within the present factual matrix, we will briefly discuss the issues raised and ruled upon by this court in light of the constitutional significance involved. Defendant contends that the murder statute is unconstitutional because it improperly shifts the burden of proof to the defendant, although the burden of proof should be on the prosecution to disprove second-degree murder in order to sustain a first-degree murder conviction. He also urges that the statute discourages those convicted of second-degree murder from appealing their convictions for fear that on remand a trial court might increase the conviction to first-degree murder. Finally, defendant asserts that the murder statute violates the separation of powers doctrine because prosecutors are prohibited from charging second-degree murder rather than first-degree murder.

The State counters that defendant here was convicted only of second-degree murder so the issue of what is necessary to sustain a conviction for first-degree murder is irrelevant. Second, it maintains that defendant here has not been discouraged from appealing his second-degree conviction, the State is not arguing that such conviction be set aside for the greater offense of first-degree murder, and in any event, a defendant placed in such a position is protected by the principle of double jeopardy. The State also retorts that defendant's separation of powers argument must fail because defendant is not adversely affected where he has been convicted of second-degree murder only, because he is not a prosecutor and, further, because the Third District of the Appellate Court in *People v. Burks* (1989), 189 Ill. App. 3d 782, 545 N.E.2d 782, has determined that "[t]he statute does not, however, prohibit the State from initially charging a defendant with second degree murder." *Burks*, 189 Ill. App. 3d at 785.

Several decisions rendered by the appellate court have specifically addressed and rejected defendant's challenges to the constitutionality of the Illinois murder statutes. Accord *People v. Jerome* (1990), 206 Ill. App. 3d 428, 564 N.E.2d 221; *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373; *People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335; *People v. Burks* (1989), 189 Ill. App. 3d 782, 545 N.E.2d 782, *appeal denied* (1991), 136 Ill. 2d 547, 567 N.E.2d 335; *People v. Thomas* (1991), 216 Ill. App. 3d 469. See also *People v. Collins* (1991), 213 Ill. App. 3d 818, 572 N.E.2d 1005; *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041; *People v. Lyons* (1991), 213 Ill. App. 3d 617, 572 N.E.2d 1163.

In *Jerome* (206 Ill. App. 3d 428, 564 N.E.2d 221), the defendant was charged and convicted of first-degree murder. On appeal, he contended that the trial court erred in refusing to instruct the jury on self-defense and second-degree murder and that the second-degree murder statute was unconstitutional. Defendant asserted that the Illinois second-degree murder statute violated due process by shifting the burden to the defendant to prove second-degree murder, a scheme analogous to the one struck down by the United States Supreme Court in *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881. The defendant here presents essentially the same argument on appeal.

The *Jerome* court distinguished Maine's felonious homicide statute at issue in *Mullaney*, from the Illinois murder statute. The court there stated:

"In Maine, however, a killing became murder when it resulted from a deliberate, cruel act committed by one person against another, suddenly *without any or without a considerable provocation*. [Citation.] In other words, in Maine, absence of provocation was a part of the definition of malice; therefore, lack of provocation was an element of the crime, and the State had to prove that element beyond a reasonable doubt; it could not be presumed. [Citation.] Malice is defined differently in Illinois, and lack of provocation is not an element of the offense of first-degree murder in Illinois. The Illinois statute does not suffer the constitutional infirmity present in the Maine statute. Requiring the defendant to prove a mitigating factor in order to reduce the offense to second-degree murder does not violate due process. [Citation.]" (Emphasis in original.) *Jerome*, 206 Ill. App. 3d at 435.

In *Clark* (207 Ill. App. 3d 439, 565 N.E.2d 1373), defendant, convicted of first-degree murder, contended on appeal that because he be-

lieved he was justified in killing the victim, although that belief was unreasonable, he should have been convicted of second-degree murder rather than first-degree murder. Like the defendant here, the *Clark* defendant questioned whether the Illinois statute was unconstitutional as a violation of due process, equal protection and separation of powers. Although the *Clark* defendant challenged the first-degree murder statute while the defendant here challenges the constitutionality of the second-degree murder statute, the analysis and conclusion remain the same. That is, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of the particular offense charged.

The defendant in *Clark* argued that he should not be required to prove second-degree murder to escape a presumption of guilt of first-degree murder. Furthermore, he asserted that defendants should be allowed to plead guilty to second-degree murder under appropriate circumstances. In replying to defendant's argument there, the court stated:

> "A fair reading of the statute in question leads to the clear conclusion there is no presumption of guilt of first-degree murder which must be rebutted by defendant. Contrary to defendant's assertions, a defendant could plead guilty to second-degree murder. [Citation.] The elements of first-degree murder under the current statute are identical to the offense of murder under the prior statute. [Citation.] The mitigating factors of second-degree murder are identical to the factors which would have reduced murder to voluntary manslaughter under the prior law. [Citation.] With regard to the prior law, the decision in *Reddick* had this to say:
>
> > 'Thus, under the 1961 Code, if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge of murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless, and must also prove beyond a reasonable doubt the statutory elements of murder.' [Citation.]
>
> In *First and Second Degree Murder in Illinois,* after acknowledging the second-degree murder statute was written with the intention of retaining all substantive statutory and case law pertaining to voluntary manslaughter, the author notes the fundamental difference is that under the current statute a defendant can only be found guilty if the State first proves guilt of first-degree murder beyond a reasonable doubt

and the defendant proves by a preponderance of the evidence one of the two mitigating factors. Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B. J. 494 (1987).

Therefore, while there may be some difference between the prior law and the existing statutory scheme, the differences which defendant purports to rely on in seeking to have the statute declared unconstitutional do not exist. Defendant does not deny that it is within the legislature's province to define criminal offenses. [Citation.]

Nor is the defendant's separation-of-powers argument persuasive. *** As previously stated, the State's Attorney has the discretion of charging a defendant with second-degree murder. [Citation.] *** The procedure outlined in section 9—2(c) of the Code only refers to the circumstances where the State charges first-degree murder and the defendant wants to reduce it to second-degree murder. Therefore, defendant's constitutional challenges are without merit." *Clark*, 207 Ill. App. 3d at 448-49.

In *Buckner* (203 Ill. App. 3d 525, 561 N.E.2d 335), also rendered by the fourth district, defendant argued that if the new statute, specifically section 9—2, which defines and governs second-degree murder, retained all of the substantive law previously applicable to voluntary manslaughter, the State then has the burden of disproving second-degree murder. He alleged that the new statute therefore was unconstitutional because it placed such a burden on the defendant.

The *Buckner* court rejected the contention that the Illinois homicide statute violates due process by requiring defendants to prove the mental state necessary to reduce first-degree murder to second-degree murder. The court went on to state that defendant's argument was contrary to the plain meaning of the statute, specifically, the burden-shifting explanation found in subsection 9—2(c). The court there concluded:

"By its terms [subsection 9—2(c)] it is only when the defendant is charged with first-degree murder and seeks to present the trier of fact with the option of convicting him of the lesser offense of second-degree murder that he has any burden of proof. To this extent, the second-degree murder statute functions as a defense against the first-degree murder charge, which the State is still required to prove *before* the trier of fact considers whether the mitigating factors were shown by a preponderance and, if it so finds, the State must disprove such factor(s) by proof beyond a reasonable doubt.

If instead the defendant is charged with second-degree murder, the State will prove first-degree murder and concede (or prove) the mitigating factors, and the burden of proof on the mitigating factors never shifts to defendant, though he may choose to present a defense." (Emphasis in original.) *Buckner*, 203 Ill. App. 3d at 533-34.

Moreover, in *People v. Thomas* (1991), 216 Ill. App. 3d 469, a case decided by the first district, we stated that "Criminal Code section 3—4(a) protects defendants convicted of the old offense of voluntary manslaughter from double jeopardy. [Citation.] *** [And,] Criminal Code section 3—4(b) protects a defendant convicted of second degree murder from being retried for first degree murder. [Citation.]" (*People v. Thomas*, 216 Ill. App. 3d at 472.) The *Thomas* court held that defendants convicted of second-degree murder do not risk being put in jeopardy any more than defendants convicted of first-degree murder and consequently are not denied equal protection of the law. (*People v. Thomas*, 216 Ill. App. 3d at 472.) The court there rationalized that "[w]hen a defendant is charged with first degree murder, but convicted of second-degree murder, the trier of fact necessarily determined that the defendant proved the existence of a mitigating factor. [Citations.] As a result, the State and defendant cannot again litigate the element of mitigation. [Citations.]" *People v. Thomas*, 216 Ill. App. 3d at 473.

In the present case, defendant was charged and initially convicted of first-degree murder. However, after hearing argument by the parties on defendant's post-trial motion, the trier of fact, the trial court, implicitly found the existence of one of the mitigating factors when it reduced defendant's conviction to second-degree murder. Accordingly, we hold that defendant here has not been adversely affected where he was convicted of second-degree murder. Moreover, based upon the principles of law and rationale as set forth in *Thomas, Burks, Buckner, Jerome, Clark*, and the other appellate court decisions, we reject defendant's challenges concerning the constitutionality of the Illinois homicide statute and affirm his conviction and sentence.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.